THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT EWING HINES, Defendant-Appellant.

(No. 56433;

First District (2nd Division)—June 26, 1973.

Robert J. Hauser and Geoffrey G. Gilbert, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Stephen J. Connolly, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

Defendant-appellant (hereafter defendant) was charged with the offense of theft of lost or mislaid property. (Ill. Rev. Stat. 1969, ch. 38, sec. 16—2.) Defendant moved to suppress his warrantless arrest, which had occurred on 14 April 1971. After a hearing on his motion on 28 April 1971, the motion was denied and defendant's bench trial began immediately. Defendant had pleaded not guilty and had waived a jury trial. Defendant was found guilty and was sentenced to pay a fine of $500 and no costs. Defendant appeals.

To facilitate an understanding of the issues raised by defendant on this appeal, we begin with the record of the hearing on defendant's pretrial motion to suppress his warrantless arrest. The sole witness at that hearing was the arresting officer. He testified that in the late morning of 14 April 1971, he had been told by a person unknown to him (described by the State in its brief as a citizen informer) that one Robert Hines, also unknown to the officer, had two checks which did not belong to Mr. Hines, but which Mr. Hines was trying to cash. The trial court later said that the officer had also been supplied by the informer with a description of Robert Hines. The officer made no attempt to secure an arrest warrant for Robert Hines. Instead, the officer and his partner proceeded to the routine patrol of their area in a marked squad car, and the officer, *inter alia,* kept an eye out for a man matching the description of Robert Hines. At 3:00 P.M. that afternoon, the officer, who was driving the squad car, saw such a man standing on a public sidewalk talking with another young person. The officer testified that at that time the man was not doing anything in violation of any law. Curbing the squad car across the street from the man, the officer called to the man to come over to the squad car. At that point, a bus passed on the street between the officer and the man, and the officer got out of the squad car and began to cross the street. When the bus had passed, the officer saw the man putting something into a litter basket on the sidewalk. The officer retrieved the things and found them to be two checks made payable to persons other than Robert Hines with the address of each payee also on the respective check. Thereupon the officer arrested Robert Hines (the defendant), who was later charged with the instant offense.

When the officer first testified as to what he had been told by the unknown informer, defendant's appointed counsel objected to the testimony as hearsay. The court overruled the objection on the ground that the hearsay was not being offered as substantive proof of the offense charged but solely to establish the reasonableness of defendant's warrantless arrest, for which limited purpose it was admissible. At the con-

clusion of the officer's testimony, the court denied defendant's motion to suppress the arrest.

Immediately thereafter, the bench trial began with a request by the prosecutor to defense counsel to stipulate, as evidence in the State's case in chief, to all the testimony of the arresting officer which had just been given at the hearing on defendant's motion to suppress the arrest. The colloquy went as follows:

"Prosecutor: I was asking for a stipulation of testimony at this point, Mr. Public Defender.

Public Defender: There are some additional factors I like [sic] to find from the officer. I'll stipulate to all of the explanation.

The Court: You stipulate to testimony already adduced on motion to suppress [to be] same testimony introduced by the State on the case in chief?

Public Defender: I would like to have additional cross-examination.

The Court: Otherwise you stipulate?

Public Defender: Yes."

Thereupon the arresting officer testified as a witness for the State and merely added that he had advised defendant of defendant's constitutional rights. On cross-examination, he admitted that defendant had given him an oral statement at the time of the arrest; he added that the place of arrest was about three miles away from the addresses on the checks (which were tax refund checks); that about two minutes elapsed between the time he first saw defendant and the time of arrest; that he did not see anything handed between defendant and the other person who was standing talking to defendant; that defendant and the other person were standing about two feet away from the litter basket; that he did not know what happened to the other person, because he was after defendant and not the other person.

The payee-addressee of one of the checks then testified that she did not know defendant, had not given him permission to possess the check, and had not seen the check before, though she usually looked for it in September. Testimony by the partner of the arresting officer, essentially corroborative of the testimony of the arresting officer, completed the State's case in chief.

Defendant then testified in his own behalf. At 3:00 P.M. on 14 April 1971, he had just come out of a store and was standing on the public sidewalk at the corner of 43rd Street and Ellis Avenue in Chicago. He was then approached by a person who handed him the two checks and asked him whether he could do anything with them. He had had the

checks in his possession for about ten seconds when the arresting officer had called him over to the squad car. As he started to respond, the bus passed between him and the arresting officer. At that time he tried to return the checks to the boy, but the boy did not accept them and started to walk away. It was then that he had thrown the checks in the litter basket. Almost immediately, the arresting officer had grabbed him, pulled him over to the litter basket, retrieved the checks, arrested him, and walked him over to the squad car. He had immediately told the arresting officer that the other person, who was still walking away had just handed him the two checks. He suspected something was wrong with the checks, but he had not had any time in which to take steps to return them to the payee-addressees.

*Opinion*

The issues which defendant presents on this appeal are as follows:

1. Defendant was unlawfully stopped, so that his arrest and the seizure of the checks as evidence against him were inadmissible as the fruits of the illegality.
2. Defendant was denied due process of law under the Fourteenth Amendment of the Constitution of the United States because he was denied his Sixth Amendment right of confrontation and an opportunity for cross-examination of the unknown citizen informer whose testimony was stipulated into the State's case in chief in order to prove the substantive truth of the offense charged.
3. Defendant was not proved guilty beyond a reasonable doubt of all of the essential elements of the offense charged.

■■■ Issues two and three are closely interrelated, and the substance of the point being made by these issues was, owing to the stipulation, never brought to the attention of the trial court. Despite that fact, we are authorized by Supreme Court Rule 615(a) to note "plain errors or defects affecting substantial rights". In this case, we feel obligated to do so, because the *only* evidence supporting one essential element of the offense charged was the hearsay evidence of the unknown citizen informer, and that evidence was expressly contradicted by the testimony of defendant.

■■ On defendant's own testimony, he had obtained control over the checks for ten seconds. That length of time would be sufficient to enable defendant to learn the identity of the owner, whose name and address was on the face of each check. Moreover, defendant conceded that he suspected something was wrong with the checks. Again, on defendant's own testimony, his very act of deliberately throwing the checks into a litter basket on a public sidewalk is adequate evidence of an intent

permanently to deprive the owner of the use or benefit of the property. There is no statutory requirement that this intent be for his own use or benefit. But, on defendant's own testimony, it is clear that control of the checks for ten seconds would make it impossible for defendant to have failed to take reasonable measures to restore the property to the owner, which is an essential element of the offense charged.

■■ If, however, defendant had been in control of the checks for over three hours, which was the hearsay testimony stipulated into the State's case in chief to prove the substantive truth of the State's case, then, and then only, was there *any* evidence on behalf of the State to support the essential element of defendant's failure to take reasonable measures to restore the property to the owner. The erroneous admission of hearsay evidence to prove the substantive truth of an essential element of the State's case is not necessarily reversible error, as, for example, in a case in which the hearsay evidence is merely cumulative. (*People v. Thompson* (1970), 128 Ill.App.2d 420, 263 N.E.2d 124.) But where the hearsay evidence, as here, is the *only* evidence as to an essential element of the State's case, we think that its admission cannot fail to constitute reversible error as a violation of defendant's Sixth Amendment right (*Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476), even if there has been no objection in the trial court to the admission of the hearsay. *People v. Wright* (1965), 65 Ill.App.2d 23, 212 N.E.2d 126.

■■ Nor will it do to say that the failure of defendant to object to his counsel's stipulation of the hearsay evidence, made in his presence, which hearsay evidence then turns out to be the only evidence supporting one of the essential elements of the State's case, precludes him from raising the issue on appeal, either on a theory of waiver of a constitutional right or on a theory of being bound by the acts of counsel done in his presence without objection. The prosecutor's request for the stipulation and defense counsel's consent thereto are routine incidents in a criminal proceeding, the crucial significance of which in the instant case was apparently not appreciated by either counsel at the time, with the result that there was nothing to alert the trial judge either. Nor is there anything in the record to suggest that defense counsel's stipulation was a matter of trial strategy; it was simply an honest mistake. (*Henry v. Mississippi* (1965), 379 U.S. 443; 85 S.Ct. 564, 13 L.Ed.2d 408; *People v. Williams* (1966), 36 Ill.2d 194, 222 N.E.2d 321.) And if this inadvertent but fatal mistake was not apparent to the professional personnel involved, how much less so could it have been to defendant himself. We conclude that under the circumstances of this case, fundamental fairness requires that we discard any theory of waiver by defendant or

of defendant's being bound by act of his counsel done in his presence without objection.

■■■ Since we must remand for a new trial, we will deal with defendant's first contention on this appeal. While it is clear, as the State points out, that the arresting officer's mere calling for defendant to come over to the squad car did not amount to an arrest (Ill. Rev. Stat. 1969, ch. 38, sec. 102—5), it may not be quite as clear that it did not amount to a seizure in violation of defendant's Fourth Amendment right. We think that it did not, because, as we read (*Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612,) there must be some element of force or of threatened force in order to constitute the restraint on the freedom to walk away, which is the essence of a seizure. For want of that element in the present case at the time of the calling over, there was no restraint suggested to constitute a seizure. (*People v. Howlett* (1971), 1 Ill.App.3d 906, 274 N.E.2d 885.) In any event, in order to constitute a Fourth Amendment violation, the seizure must be unreasonable. In *Terry v. Ohio supra*, it was recognized that seizures may be reasonable where they are made on the basis of reasonable suspicion short of probable cause. And reasonable suspicion (like probable cause) may be established by hearsay *Adams v. Williams supra*, especially where the information comes from a citizen informer. (*People v. Hester* (1968), 39 Ill.2d 489, 514, 237 N.E.2d 466, 481.) Nor, at a pretrial hearing challenging the legality of a stop or a seizure or an arrest, does the accused have a right to confront or cross-examine citizen informers reporting suspicious conduct to the police, at least where such informers are not themselves participants in the crime. *People v. Thompson* (1972), 3 Ill.App.3d 470, 278 N.E.2d 462.

■■■ We hold, therefore, that the on-street stop of defendant was reasonable under the provisions of Ill. Rev. Stat. 1969, ch. 38, sec. 107—14, and that the hearsay testimony of the unknown citizen informer was properly admitted at the hearing on defendant's motion to suppress his arrest, because it was admitted at that hearing solely for the limited purpose of explaining the reasonableness of the on-street stop.

Reversed and remanded for a new trial.

LEIGHTON and SCHWARTZ, JJ., concur.