645 P.2d 837

The STATE of Arizona, Appellee,

v.

Harold Vincent McGANN, Appellant.

No. 2 CA–CR 2246.

Court of Appeals of Arizona, Division 2.

Oct. 20, 1981.

Review Granted Dec. 22, 1981.

**324**

Robert K. Corbin, Atty. Gen., Phoenix by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Chaney, Blaser, Kelly & Don, P. C. by Thomas G. Kelly, III, Tucson, for appellant.

## OPINION

HATHAWAY, Chief Judge.

Harold Vincent McGann was indicted, tried to a jury and convicted of four counts of forgery, a felony, under the old criminal code. He was sentenced to not less than five nor more than seven years on each count, the sentences to run concurrently.

On appeal, he contends that (1) the admission into evidence of three credit cards taken from his car in a warrantless search without exigent circumstances violated the Fourth and Fourteenth Amendments of the United States Constitution, (2) the admission into evidence of credit card invoices without proper foundation violated his due process rights and (3) the trial court's refusal to invoke the rule excluding witnesses warrants reversal. We disagree.

On May 26, 1978, the defendant was arrested on an unrelated charge at his place of employment, Irish Chevron Service Station in Tucson. Present at the time were Nick DiLorenzo, assistant manager and mechanic, and Mike Sweeney, another employee. Upon his arrest, defendant asked Mr. DiLorenzo to take his car, which was parked at the station, to his home. Mr. DiLorenzo replied that he did not know where the defendant lived, so defendant gave his car keys to Mr. Sweeney with the same request. Mr. DiLorenzo took the car keys from Mr. Sweeney because, as he confirmed to the police, he suspected that defendant had committed credit card slip forgeries that had been occurring at the station and that the credit cards used were in the car. The police officers advised him that they could not search the car and one officer told Mr. DiLorenzo not to look in the car. Mr. DiLorenzo asked the police if he could keep the car at the station and was advised that he could because the car was not registered to defendant and the woman he was living with was not his wife.

The car was kept in sight, locked and parked outside the station during the day and locked inside during the night. Defendant's girlfriend came to the station once on May 27 and once on May 28 to get papers that were needed for defendant's court case. Each time, the trunk was unlocked by Mr. DiLorenzo.

On May 29, while defendant was in jail in Maricopa County, Mr. DiLorenzo searched the car and found three credit cards behind the mirror on the visor on the passenger side. He testified that the edges of the cards could have been seen from outside before he opened the car, although he had not seen them. He looked at the cards and ascertained that they were the ones suspected of being stolen. He replaced the cards as closely as possible to where he had found them and notified the police, who came out the next day. Mr. DiLorenzo pointed out the cards, the edges of which were visible from outside the automobile. One of the officers called a deputy county attorney, who advised him that it was not necessary to get a search warrant. Mr. DiLorenzo unlocked the car, the police entered and took the credit cards.

The foregoing scenario was depicted at the hearing on the defendant's motion to suppress the credit cards. The trial court initially granted the motion but upon the state's motion for rehearing, reversed its ruling and denied it.

■ The state contends that the search and seizure was accomplished by a private citizen and is therefore immune from the application of the exclusionary rule. *See Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); *State v. Rice,* 110 Ariz. 210, 516 P.2d 1222 (1973). It is true that the police may receive the fruits of an illegal private search if there has been no governmental involvement in it. *State v. Hughes,* 8 Ariz.App. 366, 446 P.2d 472 (1968), cert. den. 395 U.S. 940, 89 S.Ct. 2010, 23 L.Ed.2d 457 (1969). The characterization of a search as "private" or "governmental" depends on the extent of police involvement in the total enterprise. *State v. Bohannon,* 3 Kan.App.2d 448, 596 P.2d 190 (1979); Annot., 36 A.L.R.3d 553 (1971). Mr. DiLorenzo's search, conducted without police encouragement and, in fact, against the instructions of the police, was clearly a private act. He did not, however, turn over to the police the fruits of this search. Instead, he replaced the credit cards and called the police, who entered the car without a warrant and themselves seized the evidence. At that point, the private search had ended. The actions of the police were subject to the proscriptions of the Fourth Amendment.

■ We cannot agree with the state's argument that the police seizure was reasonable because it went no further than the prior private search and seizure. The cases cited in support of this proposition deal with searches made by airline personnel in the course of their work handling passengers' baggage. *See United States v. Bulgier,* 618 F.2d 472 (7th Cir. 1980). Other cases have involved luggage abandoned in hotel rooms. *See Barnes v. United States,* 373 F.2d 517 (5th Cir. 1967). We believe these cases are distinguishable from the case before us. In the cases cited by the state, the private searcher had custody of the defendant's belongings. In the instant case, the defendant did not voluntarily put his automobile into Mr. DiLorenzo's custody. It would be unwise to extend the holding of the state's cited cases to the present situation. If the state's argument were adopted, it would logically allow the police to search again, without a warrant, any place that an informant had previously searched.

■ Absent exigent circumstances, the next proper step would have been to procure a search warrant. Warrantless auto searches are often justified where the police have probable cause to believe contraband or evidence of a crime is in the automobile. *See State v. Sardo,* 112 Ariz. 509, 543 P.2d 1138 (1975); *State v. Benge,* 110 Ariz. 473, 520 P.2d 843 (1974). This doctrine is based on the inherent mobility of motor vehicles. Nevertheless, "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire,* 403 U.S. 443, 461–62, 91 S.Ct. 2022, 2035–2036, 29 L.Ed.2d 564 (1971). In *Coolidge,* for example, a warrantless auto search was held illegal because the suspect's automobile was parked and neither the defendant nor his wife were available to drive it away. In the instant case, the defendant's car keys were in Mr. DiLorenzo's possession. The defendant's girlfriend obviously did not have a set, because Mr. DiLorenzo had to unlock the car for her when she needed to get things out of it. The facts here are similar to those in *Coolidge,* which we believe controls. The Arizona cases, such as *State v. Million,* 120 Ariz. 10, 583 P.2d 897 (1978); *State v. Hunt,* 118 Ariz. 431, 577 P.2d 717 (1978); *State v. Sardo,* supra, and *State v. Benge,* supra, are distinguishable in that they involved vehicles stopped on the highway or while occupied by suspects, so that the possibility of the vehicle's removal from the jurisdiction at the time of the seizure was real. That exigent circumstance simply did not exist here, where the car was watched during the day and locked in the garage at night, where the defendant was in jail and where Mr. DiLorenzo had the only set of keys. Also, *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), can be distinguished. In *Cardwell,* the supreme court upheld the examination of the exterior of a car while its owner was in jail. The court expressly reserved the question whether a search of the interior without a warrant would have been justified. 417 U.S. at 592, n. 8, 94 S.Ct. at 2470, n. 8.

■ Even though the seizure by the police was illegal, the admission of the cards was harmless error because Mr. DiLorenzo's testimony about the stolen cards would have been sufficient to establish the defendant's guilt. *See State v. Canaday*, 117 Ariz. 572, 574 P.2d 60 (App.1977). The defendant argues that *State v. Hunt*, 2 Ariz. App. 6, 406 P.2d 208 (1965), requires suppression not only of the credit cards but also of Mr. DiLorenzo's testimony about them. In *Hunt*, this court stated:

"[T]he exclusionary rule, *if applicable*, is broader than the exclusion of items of personal property alone. It applies to oral evidence adduced from an officer's testimony as to what he saw or found pursuant to an illegal search." 2 Ariz. App. at 11–12, 406 P.2d 208. (Emphasis added)

It has already been pointed out that the exclusionary rule does not apply to Mr. DiLorenzo's search. Neither does the illegality of the police seizure somehow taint the previous, private search with state action. Mr. DiLorenzo's testimony derives from his search; it is not the fruit of the illegal police seizure.

■ Defendant contends that the foundation was inadequate for the admission of credit card slips that were not the basis for the four charges in the indictment. He claims that there was no evidence showing that he lacked authority to sign two of the names. We disagree. The station manager testified that Mr. Howard stated that his card was being used fraudulently. The station owner confirmed the fraudulent use when the oil company billed him back on bad slips for Mr. Howard and Mr. Christison. He had to repay the oil company for amounts on slips charged to Mr. Howard on an unauthorized signature. The evidence was sufficient for reasonable minds to infer that Mr. Howard's and Mr. Christison's cards were being used fraudulently. *See State ex rel. LaSota v. Corcoran*, 119 Ariz. 573, 583 P.2d 229 (1978).

■ Defendant argues that the handwriting expert did not positively identify the questioned signing as having been done by defendant, but stated they "most probably," "very probably," or "probably" were signed by him. Absolute terms are not necessary. M. Udall, Arizona Law of Evidence, § 21 at 36 (1960); *State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974), cert. den. 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975). A factual issue is created for the jury. *State ex rel. LaSota v. Corcoran*, supra.

■ Defendant contends that the trial court's refusal to invoke the rule excluding witnesses from the courtroom warrants reversal. He attempted to invoke the rule in the following manner, after the trial was in progress:

"MR. McGANN: In the other point you mentioned later, I would like to invoke the Rule in sequestering the witnesses in the case. I don't want them in the courtroom.

THE COURT: Ordinarily the request, unless it's made prior to starting the testimony itself, is not available then by not making it at the start, was there any particular situation you were directing your request for?

MR. McGANN: It was my intention from the very beginning to make that request, and it slipped my mind. There was a definite purpose for it.

MR. HEMLICH: I have no objection to that motion. I can state there have been no other witnesses in the courtroom during any testimony thus far, to my knowledge.

THE COURT: I'm not going to at this time bring them in and invoke the Rule. You keep the witnesses from discussing the matter with each other at least until after they have testified.

MR. HEMLICH: Yes, Your Honor. Mr. DiLorenzo is present and Mr. Irish won't be here until 11:00 o'clock.

THE COURT: The county attorney has agreed to make the request those two witnesses not discuss anything about the case, and the reason that you don't invoke it at this point—well then, maybe the jury will get the impression that they

could draw one of two impressions, decide the witnesses up to this point did not warrant their being placed under the Rule, and the Court is giving more believability to that testimony, or now the Court is now inferring some of the witnesses that are still left to testify are getting together and deciding what their story should be.

If you place them under the Rule before the start of the trial you avoid these impressions. Show the request for the Court to invoke the Rule is denied, and as being untimely.

MR. McGANN: I realize I was in error. I wanted to make it part of the record. I'm pleased with the Court's ruling."

Rule 9.3(a), Rules of Criminal Procedure, 17 A.R.S., makes the exclusion of witnesses mandatory upon request. The rule provides:

"Prior to or during any proceeding the court may, and at the request of either party shall, exclude prospective witnesses from the courtroom and direct them not to communicate with each other until all have testified."

In *State v. Roberts*, 126 Ariz. 92, 612 P.2d 1055 (1980), the court reversed a conviction, stating that "failure to honor an exclusionary request is presumed prejudicial unless the absence of prejudice is clearly manifest from the record." 126 Ariz. at 94, 612 P.2d 1055. In the instant case, the court's refusal to permit the invocation of the rule was, as is apparent from the quoted portion of the record, to avoid giving the jury the impression that the rule is invoked with respect to some witnesses but not with respect to others. The court sought to avoid the appearance before the jury that the rule was needed as to certain testimony but not as to other. Even so, the benefits of the rule were afforded the defendant in the court's direction to the prosecutor, and his agreement thereto. The defendant expressed his agreement with the court's ruling and in effect consented to it. Additionally, we find that absence of prejudice is clearly manifest from the record in satisfaction of *State v. Roberts.*

Affirmed.

HOWARD and BIRDSALL, JJ., concur.