645 P.2d 811
**STATE of Arizona, Appellee,**

v.

**Harold Vincent McGANN, Appellant.**

**No. 5459–PR.**

Supreme Court of Arizona,
In Banc.

April 30, 1982.

Robert K. Corbin, Atty. Gen., Phoenix, Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Chaney, Blaser, Kelly & Don, P. C. by Thomas G. Kelly, III, Tucson, for appellant.

GORDON, Vice Chief Justice:

Appellant, representing himself and assisted by advisory counsel, was convicted of four counts of forgery in violation of former A.R.S. § 13–421 [now A.R.S. § 13–2002]. The Court of Appeals affirmed the convictions after an appeal through advisory counsel. *State v. McGann*, Ariz., 645 P.2d 837 (1981). We accepted jurisdiction pursuant to Ariz.Const.Art. 6, § 5(3) and Ariz.R.Crim.P. 31.19. The opinion of the Court of Appeals is vacated, and the convictions are reversed and remanded.

## PRIOR ACTS

Appellant worked at a Chevron gasoline station in Tucson, Arizona. He was charged with four counts of forging Clay Coughanour's signature on Chevron credit card receipts. In addition to the four receipts on which the charges were based, the prosecution introduced into evidence 34 other receipts signed with Clay Coughanour's name, 28 with Thomas Howard's name, 23 with John Christison's name, and 6 with James Lanham's name. The purpose of introducing these prior crimes, apparently, was to prove appellant's identity and his opportunity to commit the crimes charged. See Ariz.R.Evid. 404(b).

Before evidence of a prior crime may be admitted for purposes of Rule 404(b), there must be sufficient proof of the crime that it could be presented to a jury if the crime was charged. *State v. Hughes,* 102 Ariz. 118, 426 P.2d 386 (1967). This means that there must be substantial evidence of each element of the crime charged.

The elements of forgery under former A.R.S. § 13–421 are signing another's name, without that person's consent, and with the intent to defraud. The issue raised by appellant's petition for review is whether the 57 receipts in Howard's, Christison's, and Lanham's names were inadmissible as evidence of prior crimes for lack of substantial proof of no consent.

The manager of the gas station where appellant worked and allegedly forged the receipts testified that per its usual business practice, Chevron back-billed him for the amounts due on all the receipts admitted because the customers named on those receipts informed Chevron that their signatures were unauthorized. In addition, Howard had told the station manager that his signature was unauthorized on the 28 receipts in his name, and the station mana-

ger testified to this. If not otherwise objectionable, we would agree with the Court of Appeals that this is sufficiently substantial evidence of no consent to allow admission of the 57 receipts.

A.R.S. § 13–4035, however, requires this Court to review the entire record for fundamental error when a defendant in a criminal case appeals. Fundamental error is "error as goes to the foundation of the case, or which takes from the defendant a right essential to his defense." *State v. Pulliam,* 87 Ariz. 216, 222, 349 P.2d 781, 785 (1960), *overruled on other grounds, State v. Cobb,* 115 Ariz. 484, 566 P.2d 285 (1977). There was fundamental error in admission of the 57 receipts in Howard's, Christison's, and Lanham's names, so the convictions must be reversed.

Howard's statement to the station manager that Howard had not authorized the use of his signature was clearly hearsay. The statement was an oral assertion by Howard not made at the trial but which was offered at trial to prove the truth of the matter asserted therein—*i.e.,* that Howard had not authorized his signature. See Ariz.R.Evid. 801. Because the statement does not fall within any of the exceptions to the hearsay rule found in Ariz.R.Evid. 803 and 804, it was inadmissible under Ariz.R. Evid. 802.

The station manager's testimony about Chevron back-billing him was also hearsay. The back-billing act by Chevron was nonverbal conduct intended as an assertion of unauthorized signatures, not made during the trial, and offered to prove the truth of the matter asserted therein. See Ariz.R.Evid. 801. It too does not fall within any of the exceptions to Ariz.R.Evid. 803 [1] or 804, so it also was inadmissible under Ariz.R.Evid. 802.

---

1. It could be argued that the evidence of the back-billing by Chevron fits within the business records exception of Rule 803(6). The exception does not apply to this case for two reasons. First, the station manager was not a custodian of Chevron's records or an otherwise qualified Chevron employee as required by Rule 803(6)(e). Second, the evidence involves two levels of hearsay, and the second does not fit within the exception. Chevron's records are the first level of hearsay. The fact that Chevron's records show that the station manager was back-billed is within the business records exception. But the customers' statements that

Thus, there was no evidence that the signatures on the 57 receipts in Howard's, Christison's and Lanham's names were unauthorized.[2]  Further, the prosecution failed to introduce any evidence that the six receipts in Lanham's name had been signed by appellant.  Therefore, the 57 receipts should not have been admitted into evidence.

■■■  The majority rule is that if hearsay evidence is admitted without objection, it becomes competent evidence admissible for all purposes.  Annot., 79 A.L.R.2d 890, § 3 (1961).  This is the rule in Arizona. *State v. Tafoya*, 104 Ariz. 424, 454 P.2d 569 (1969).  But when hearsay evidence is admitted without objection, it is not conclusive proof of the matter for which it was offered.  *State v. Baca*, 83 N.M. 184, 489 P.2d 1182, 1183 (Ct.App.1971).  When hearsay evidence is the sole proof of an essential element of the state's case, reversal of the conviction may be warranted.  *See People v. Hines*, 12 Ill.App.3d 582, 299 N.E.2d 581 (1973); *State v. Baca, supra*; Annot., 79 A.L.R.2d 890, § 24 (1961).  In *Arizona*, if the admission of hearsay evidence amounts to fundamental error in a criminal case, we will reverse even if the defendant has failed to object to its admission.

The erroneous admission of the hearsay evidence in the instant case caused fundamental error.  Initially, even though the four receipts from which the charges arose and the other 34 receipts in Coughanour's name were properly admitted, 57 instances of prior crimes were improperly admitted.  Hearsay evidence was the sole proof of an unauthorized signature on these 57 receipts.  Moreover, these 57 receipts were in the names of three people other than the person victimized in the four counts charged.  Hence, the jury was given information that in addition to the crimes charged, appellant committed another 57 similar crimes against three other people even though the prosecution could not properly prove those other crimes.  Under such circumstances, it is unlikely that the jury could have isolated and considered the weight of the evidence properly admissible to prove only the four counts charged.  Despite appellant's failure to object on hearsay grounds, admission of the 57 receipts in Howard's, Christison's, and Lanham's names was fundamental error.  The hearsay evidence was the sole proof of an element of the 57 prior crimes.  As the state proceeded at trial, the foundation of its case was the appellant's commission of similar, prior crimes.  The error was not harmless, therefore, as it went to admission of the evidence that constituted the foundation of the state's case.  *See Pulliam, supra*.  Because this fundamental error was not harmless under the facts of this case, we must reverse appellant's four convictions.

### THE AUTOMOBILE SEARCH

In addition to the receipts, the prosecution also introduced into evidence three credit cards seized from appellant's car.  Appellant was arrested on May 26, 1978 on an unrelated charge at the station he worked at in Tucson.  He was arrested by police from Maricopa County who were ac-

---

their signatures were unauthorized, whether shown directly by the statements in the records or by inference from Chevron's business practices, constitute a second level of potential hearsay.  Multiple hearsay is not admissible, unless each part of it meets a hearsay exception.  Ariz.R.Evid. 805.  When the customers' statements are used to prove the truth of the matter asserted therein—that the customers' signatures were unauthorized—it is inadmissible hearsay; when the customers' statements are used for a purpose other than to prove the truth of the matter asserted therein, *e.g.*, to prove that Chevron had notice of a customer's statement, then it is not hearsay.  *See United States v. Shiver*, 414 F.2d 461 (5th Cir. 1969).

In the instant case, the effect of the station manager's testimony was to introduce the out-of-court statements of Howard, Christison, and Lanham to Chevron to prove that their signatures were in fact unauthorized.  The taint of hearsay in statements does not dissipate merely because they are found in business records.  The testimony was hearsay not within the business records exception.

2.  Coughanour testified at trial that he had not authorized appellant to sign Coughanour's name.  This was sufficiently admissible evidence of no consent as to the receipts in Coughanour's name.

companied by a police officer from Tucson. At the time of his arrest, appellant offered his car keys to Nick DiLorenzo, the assistant station manager, and asked DiLorenzo to drive the car to appellant's abode. When DiLorenzo refused after saying he did not know where appellant lived, appellant gave his keys and the request to Mike Sweeney, another employee at the station.

While the officers were at the station arresting appellant, DiLorenzo told them his suspicion that appellant had been forging credit card receipts at the station and that there would be evidence of the crimes in appellant's car. DiLorenzo wanted to search the car, but the police expressly told him not to do so.

DiLorenzo retrieved the keys from Sweeney and exercised control over the car for the next three days. During this time, appellant was being held in the Maricopa County Jail. On the third day, apparently acting out of frustration at no official action concerning a search of the car, DiLorenzo opened the car and searched it.

He found three gasoline credit cards sandwiched between the sunvisor on the passenger side and a mirror attached to that sunvisor. The cards bore the names of Coughanour, Howard, and Lanham. DiLorenzo replaced the cards and called the police. When the police arrived and looked into the car, they could see the edges of the cards sticking out from behind the mirror. They called an attorney at the Pima County Attorney's Office and asked about the propriety of searching the car. The attorney told them that they did not need a warrant to conduct a search. DiLorenzo then opened the car for the police, and they searched it without a warrant and seized the three credit cards.

Appellant objected to the admission of the credit cards on the basis that the police conducted a search in violation of the Fourth Amendment. At first, the trial court granted the motion, but then later it reversed itself and denied the motion. On appeal, the Court of Appeals overruled the trial court and found the search by the police to be illegal. The admission of the

credit cards into evidence was found to be harmless error, however, because DiLorenzo, a private citizen, was not subject to the Fourth Amendment and could properly testify to his knowledge of the cards.

Because appellant can be retried, we have considered this Fourth Amendment issue. We disagree with the Court of Appeals and hold that the police search was proper.

The parties do not contest that the police action in the instant case constituted a "search" within the meaning of the Fourth Amendment. The matter in controversy is whether the search was also "unreasonable" within the meaning of the same amendment.

■ The police conducted the search in this case without a warrant. Warrantless searches are per se unreasonable unless they fall within one of the few, specified exceptions. *State v. Pacheco*, 121 Ariz. 88, 588 P.2d 830 (1978). One of these exceptions is where a party other than the defendant validly consents to the search. *See State v. Schad*, 129 Ariz. 557, 633 P.2d 366 (1981).

■ A third party validly consents to the search of a defendant's premises or property when: (1) the consent is voluntarily given; and (2) the third party has "common authority over or other sufficient relationship to the premises" or property searched or seized. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 250 (1974); *accord, Schad, supra*. In the instant case, DiLorenzo voluntarily consented to the search by the police. Further, he apparently possessed a sufficient relationship to the car to consent to its search. Appellant had given the keys to and control over the car to Sweeney. For Fourth Amendment purposes, Sweeney had the power to then pass the keys and control on to DiLorenzo. This act cloaked DiLorenzo with sufficient apparent authority to consent to the search performed in the instant case as it gave him possession of the car and its keys. When the police arrived to conduct the search, they reasonably believed that DiLorenzo had lawful authority

over the car. That DiLorenzo gained control over the car from Sweeney with an intent to consent to a search thereof contrary to appellant's interests demonstrates appellant's poor choice of persons to take care of his car but does not contravene the Fourth Amendment. *See Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Schad, supra; State v. Stanley*, 123 Ariz. 95, 597 P.2d 998 (1979). The warrantless search was valid under the third party consent exception to the Fourth Amendment.[3]

A comment is in order. The police reasonably believed that DiLorenzo had authority to consent to the search. They had no actual or constructive knowledge that DiLorenzo lacked such authority. Therefore, because DiLorenzo had apparent authority to consent to the search, we need not determine whether he had actual authority.

"[T]his view * * * is more consistent with the Fourth amendment proscription of unreasonable searches and seizures than a rule requiring actual authority regardless of reasonable appearances. Moreover, the exclusionary rule imposed where the fourth amendment is violated is thought to operate to deter police from unreasonable searches and seizures. Obviously, there can be no deterrent effect where the police believe that they are acting reasonably and lawfully and it is only * * * a hindsight determination that actual authority is found wanting. *This does not mean that the police may proceed without inquiry in ambiguous circumstances or that they may reasonably proceed based on the consenting party's assertions of authority if those assertions appear unreasonable. See* [W.] LaFave, [*Search & Seizure*] § 8.3 at 722–25 [1978]." (Emphasis added.)

*Nix v. State*, 621 P.2d 1347, 1349–50 (Alaska 1981).

The opinion of the Court of Appeals is vacated. Appellant's four convictions and sentences thereon are reversed and remanded.

HAYS, CAMERON and FELDMAN, JJ., concur.

HOLOHAN, Chief Justice (specially concurring):

I concur in the result.

---

**3.** Thus, the deputy county attorney's advice that a warrant was not needed ultimately turns out to be correct. But the necessity of the Superior Court, Court of Appeals, and this Court wrestling with the Fourth Amendment issue could have been avoided had the county attorney advised the police to seek a search warrant in the first instance. No reason for not obtaining a warrant appears in the record. We strongly recommend that warrants always be sought when possible to prevent unjustified incursions into the private affairs of our citizens and to prevent the exclusionary rule from negating the fruits of otherwise proper police investigation.