NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARK ANTHONY STRICKLAND, *Appellant.*

No. 1 CA-CR 24-0358

FILED 08-05-2025

Appeal from the Superior Court in Maricopa County
No. CR2022-135886-001
The Honorable Michael W. Kemp, Judge (*Retired*)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Law Office of Randal B. McDonald, Phoenix
By Randal B. McDonald
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge David B. Gass delivered the decision of the court, in which Judge Michael J. Brown and Judge Andrew J. Becke joined.

_____

**G A S S**, Judge:

¶1 Following a trial, the jury convicted and the superior court sentenced Mark Anthony Doug Strickland on 5 felony counts: 1 count of disorderly conduct, 2 counts of aggravated assault with a deadly weapon, and 2 counts of discharge of a firearm. Strickland argues his trial was "infected with errors surrounding improper argument and evidence" and asks the court to reverse his convictions and grant him a new trial. The court affirms the superior court's rulings.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 The court views the facts in the light most favorable to sustaining the jury's verdict, resolving all reasonable inferences against Strickland. *See State v. Felix*, 237 Ariz. 280, 283 ¶ 2 (App. 2015).

¶3 The case involves 4 people in Strickland's orbit:

- The victim, who is Strickland's 9-year-old niece.

- The victim's mother, who also is Strickland's sister.

- The victim's grandmother, who also is Strickland's mother.

- The mother's boyfriend, who is unrelated to any of the others.

¶4 Strickland and the boyfriend had a history. They previously threatened each other. The boyfriend texted Strickland, saying he would shoot Strickland and his kids. In response, Strickland said he would shoot the boyfriend first. Because of the history, the victim, the mother, and the boyfriend were careful when they would be around Strickland.

¶5 In September 2022, the victim, the mother, and the boyfriend went to the grandmother's house to drop off some things. Strickland lived with the grandmother. Because of the bad history between Strickland and the boyfriend, the victim's family parked their vehicle a few houses down

from the grandmother's house. And the victim and the boyfriend stayed in the vehicle.

¶6          Strickland noticed the boyfriend sitting in the front passenger seat of the vehicle and went towards it. Victim's mother tried to stop Strickland. At that point, Strickland pulled a handgun from his waistband and shot into the vehicle at least 3 times. A bullet went through the vehicle's windshield. And a bullet struck the victim, causing a large laceration on the left side of the victim's head.

¶7          Strickland then walked closer to the vehicle before walking off. Strickland left the scene with a friend. The boyfriend saw the victim bleeding and drove away. Victim's mother and the grandmother got into another vehicle to locate victim and the boyfriend. The boyfriend stopped the vehicle, discovered the victim was shot, and called 9-1-1.

¶8          During the 9-1-1 call, the boyfriend told the dispatcher the victim was hit and he knew who shot the victim. The boyfriend told the dispatcher it was the victim's uncle—Strickland. Towards the end of the 9-1-1 call, the victim's mother arrived. The boyfriend told her the victim was shot. The victim's mother then ran to the victim and tried to help. The victim's mother can be heard crying and saying, "it's okay baby you are not going to die . . . can you get an ambulance please . . . oh please god."

¶9          The police found Strickland at a different location, followed him, and then arrested him. The police took Strickland into custody. Before the police questioned Strickland, they read him his *Miranda* rights. During the questioning, the police asked Strickland if he knew why the police were talking to him. He said he did not, but then he said it might have something to do with the boyfriend. The police asked Strickland, "Why did you shoot [the boyfriend]?" To which Strickland replied, "I think we are done here." The police ended the questioning at that point. The detective noted in the probable cause statement Strickland "invoked his rights and did not desire to speak to detectives. No question[s] were asked once [he] invoked his rights."

¶10         The State charged Strickland with 1 count of aggravated assault to a person under 15 years old (the victim), a class 2 felony; 1 count of aggravated assault as to the boyfriend, a class 3 felony; 1 count of discharge of a firearm at a structure, a class 3 felony; 1 count of unlawful discharge of a firearm, a class 6 felony; and 1 count of disorderly conduct as to victim's mother and/or the grandmother, a class 6 felony. *See* A.R.S. §§ 13-1204, -705, -1211, -3107, -2904.

¶11 In February 2024, the first trial ended in a mistrial. At the end of the second trial in May 2024, defense counsel moved for a Rule 20 judgment of acquittal, arguing the State did not provide substantial evidence to support a conviction on each of the counts. The superior court denied the motion as to all counts.

¶12 The jury then found Strickland guilty on all counts and found the State proved the aggravating circumstances for the 2 aggravated assault counts. In June 2024, the superior court sentenced Strickland to 15 years for count 1 and 5 years for count 2, to run consecutively. The superior court sentenced Strickland to 5 years for count 3, 2.25 years for count 4, and 2.25 years for count 5. Counts 3 to 5 are to run concurrently with count 2.

¶13 The court has jurisdiction over Strickland's timely appeal under Article VI, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21.A, 13-4031, and -4033.A.1.

**ANALYSIS**

¶14 Aside from the sufficiency of the evidence related to the disorderly conduct conviction, the court reviews all other issues for fundamental error. Because Strickland failed to object to all other issues he raises on appeal, he failed to preserve his claims absent a showing of fundamental error. *See State v. Escalante*, 245 Ariz. 135, 138 ¶ 1 (2018).

¶15 When reviewing for fundamental error, the court first determines whether the superior court erred. *State v. Melendez*, __ Ariz. __, __ ¶ 16, 565 P.3d 1034, 1040 (2025). If the review shows error occurred, the court must "evaluate whether the error was fundamental and prejudicial." *Id.* To show fundamental error, Strickland must establish an (1) error going to the foundation of his case, (2) error depriving him of a right essential to his defense, or (3) error of such magnitude he could not possibly have received a fair trial. *See Escalante*, 245 Ariz. at 142 ¶ 21. To prove prejudice, Strickland must show "that without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *See id.* at 144 ¶ 31. If Strickland proves both fundamental error and prejudice, then the court must grant a new trial. *See Melendez*, __ Ariz. at __ ¶ 16, 565 P.3d at 1040.

I.     **Sufficient evidence supports Strickland's disorderly conduct conviction.**

¶16 Strickland argues the court should vacate his conviction for disorderly conduct because the evidence presented at trial was insufficient. The sufficiency of the evidence is a question of law the court reviews *de*

*novo. State v. West*, 226 Ariz. 559, 562 ¶ 15 (2011) (citation omitted). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 562 ¶ 16 (quoting *State v. Mathers*, 165 Ariz. 64, 66 (1990)) (internal quotations omitted). "In reviewing the sufficiency of the evidence, [the court] compare[s] the evidence 'against the statutorily required elements of the offense.'" *State v. Brock*, 248 Ariz. 583, 592 ¶ 22 (App. 2020) (quoting *State v. Pena*, 209 Ariz. 503, 505 ¶ 8 (App. 2005)).

**¶17**　　　　Without objection, the State introduced the 9-1-1 call. Towards the end of the call, a voice can be heard crying and saying, "it's okay baby you are not going to die . . . can you get an ambulance please . . . oh please god." The boyfriend testified the voice was that of the victim's mother.

**¶18**　　　　Defense counsel argues the State did not present sufficient evidence of the victim's mother's peace being disturbed because she did not testify. The State argues the 9-1-1 call, together with the boyfriend's testimony, establishes each element of the charged offense for disorderly conduct. *See generally* A.R.S. § 13-2904.A.6 ("A person commits disorderly conduct if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person . . . [r]ecklessly handles, displays or discharges a deadly weapon or dangerous instrument.").

**¶19**　　　　The State is correct. The 9-1-1 call, together with the boyfriend's testimony sufficiently supports the jury's disorderly conduct verdict. *See Felix*, 237 Ariz. at 283 ¶ 2.

## II.　　The State's insinuation Strickland prevented the attendance of several key witnesses was not error, fundamental or otherwise.

**¶20**　　　　Strickland argues the State committed prosecutorial misconduct during closing arguments and during sentencing when it insinuated he prevented the attendance of several key witnesses.

**¶21**　　　　Prosecutorial misconduct goes beyond error. It implies "a concurrent ethical rules violation." *State v. Shortman*, 254 Ariz. 338, 343 ¶ 20 (App. 2022) (citation omitted). Because Strickland has not argued the State acted unethically, he has not argued prosecutorial misconduct. Instead, he has argued prosecutorial error. To secure relief for prosecutorial error, Strickland must show the error "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Murray*, 250

Ariz. 543, 548 ¶ 13 (2021) (quoting *State v. Morris*, 215 Ariz. 324, 335 ¶ 46 (2007)). The same standard applies, whether the claim is one of individual or cumulative prosecutorial error. *See State v. Robinson*, 253 Ariz. 121, 143 ¶ 64 (2022).

**¶22** During closing arguments, the State said Strickland and his family "made a concerted effort to make sure [the victim] isn't here today." The State also said the grandmother made "up reasons about why her testimony should be discredited." During sentencing, the State said Strickland had "potentially threaten[ed] State's witnesses or encourag[ed] them not to come to trial." Defense counsel did not object to those statements. On appeal, Strickland argues the State's arguments denied him his Sixth Amendment right to confront his accusers. And because the jury already had found aggravating circumstances, Strickland asserts the State's arguments caused the superior court to consider Strickland's alleged involvement in their absence as an additional aggravating circumstance for sentencing purposes.

**¶23** The State has wide latitude during closing arguments and during sentencing. *See State v. Acuna Valenzuela*, 245 Ariz. 197, 222 ¶ 109 (2018). That latitude "includes arguing all reasonable inferences from the evidence." *Id.* An argument is improper when it "appeal[s] to the jurors' emotions, passions, or prejudices by urging them to convict defendant for reasons wholly irrelevant to his own guilt or innocence." *State v. Herrera*, 174 Ariz. 387, 397 (1993) (quotations omitted). Because Strickland did not raise the issue at trial, the court reviews for fundamental error. *See Melendez*, __ Ariz at __ ¶ 16, 565 P.3d at 1040.

**¶24** On the first day of the trial, the superior court gave the jury preliminary instructions, in which it admonished the jury that lawyer's statements are not evidence. The superior court repeated that admonition in the final jury instructions. The superior court also instructed the jury about the absence of the victim and victim's mother, telling the jury it should not consider their absence or the reason for it. The court presumes the jurors follow instructions made by the superior court. *State v. Newell*, 212 Ariz. 389, 403 ¶ 68 (2006).

**¶25** During sentencing, the superior court referenced the State's discussion about the absence, but said it was "not factoring that in. [] that weight does not weigh on me because I don't know if you had anything to do with that. . . . that's not going to be part of my analysis."

**¶26**      Strickland thus does not show any error, fundamental or otherwise.

### III.    Strickland does not prove he was prejudiced by the admission of his post-*Miranda* statements and the doctor's testimony.

**¶27**      The court reviews the admission of evidence for an abuse of discretion and applies fundamental error review for evidence admitted without objection. *State v. Allen*, 253 Ariz. 306, 325 ¶ 13 (2022).

### A.    Post-*Miranda* Statements

**¶28**      To begin, Strickland challenged the admission of the police interrogation during the first trial. During the second trial, defense counsel objected to the admission of Strickland's police interview but limited the objection to hearsay. The superior court overruled that objection. On appeal, Strickland does not challenge the admissibility of the interrogation. Instead, he argues the State and police violated his rights when they referenced his silence after he invoked his right to silence under the Fifth Amendment.[1] Because Strickland did not object to the testimony at trial, the court reviews for fundamental error. *See Melendez*, __ Ariz. at __ ¶ 16, 565 P.3d at 1040.

**¶29**      Before questioning, the police read Strickland his rights in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966). Even after being read his *Miranda* rights, Strickland answered the detective's questions, constituting waiver by conduct. *See Melendez*, __ Ariz. at __ ¶ 20, 565 P.3d at 1041. After that, "an individual must unequivocally and unambiguously invoke [his rights]." *Id.* ¶ 19 (internal quotations omitted) (citing *Berghuis v. Thompkins*, 560 U.S. 370, 379, 381–82). At one point during the questioning, Strickland says, "I think we are done here."

**¶30**      First, any responses Strickland made before then were admissible because he had not invoked his rights. Second, at best, Strickland's statement is an ambiguous invocation of his rights. But the detective stopped questioning him at that point, and in the probable cause statement, the detective wrote Strickland invoked his rights. With that backdrop, during the detective's testimony, the detective said, "I do not even believe I asked him [if he was at the scene of the crime] before he said he did not wish to speak." No doubt, even assuming Strickland's invocation

---

[1] Strickland in his Opening Brief bases his argument on *State v. Melendez*, 256 Ariz. 14 (App. 2023), which the Arizona Supreme Court vacated in *State v. Melendez*, __ Ariz. __, 565 P.3d 1034 (2025).

was ambiguous, the detective's statement was an improper reference to Strickland's invocation of his right to remain silent. *See id.* ¶ 20.

**¶31**         But the analysis does not end there. Strickland must show sufficient prejudice necessary to support fundamental error. *See Escalante*, 245 Ariz. at 144 ¶ 31. "Establishing prejudice requires a defendant to show, based on the unique facts of the case, that the error was so egregious that he could not possibly have received a fair trial, or . . . that absent the error a reasonable jury . . . could have reached a different verdict." *State v. Fierro*, 254 Ariz. 35, 41 ¶ 21 (2022) (quoting *Escalante*, 245 Ariz. at 142 ¶ 21, 144 ¶ 29) (cleaned up). "The standard is not subjectively what this particular jury might have concluded, but is rather an objective inquiry, requiring [defendant] to show that without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *Id.* (quoting *Escalante*, 245 Ariz. at 142 ¶ 21, 144 ¶ 29) (cleaned up). Strickland cannot rely on speculation but must point to evidence in the record showing prejudice. *See State v. Riley*, 248 Ariz. 154, 179–80 ¶ 88 (2020). True, improperly admitted evidence may support reversal when it is the "sole proof of an essential element of the state's case," but a defendant does not establish prejudicial fundamental error warranting reversal merely by pointing to "conflicting evidence for the jury's consideration." *State v. Strong*, 258 Ariz. 184, 211 ¶ 116 (2024) (quoting *State v. McGann*, 132 Ariz. 296, 299 (1982)). And the errant admission of cumulative evidence does not constitute fundamental error. *State v. Moody*, 208 Ariz. 424, 455 ¶ 121 (2004); *State v. Williams,* 133 Ariz. 220, 226 (1982).

**¶32**         Strickland did not show the prejudice necessary to establish fundamental error because given the weight of the evidence against Strickland, "the error did not contribute to or affect the verdict." *State v. VanWinkle*, 229 Ariz. 233, 237 ¶ 16 (2012) (citation omitted) (considering prejudice for violating defendant's invocation of rights under harmless error review); *see also Escalante*, 245 Ariz. at 144 ¶ 31 (considering prejudice standard for fundamental error review).

**¶33**         As in *VanWinkle*, strong evidence supports Strickland's convictions. Eyewitness testimony put Strickland at the scene, put the gun in Strickland's hand, had Strickland firing the gun at the vehicle, and the victim sustaining a gunshot wound as result. *See* 229 Ariz. at 237 ¶¶ 16–17 (ruling the State met its burden on harmless error review to prove by clear and convincing evidence "the error did not contribute to or affect the verdict" because of the strength of the other evidence).

¶34        Strickland argues the State compounded the error in its closing argument when the State asked the jury to infer guilt because Strickland remained silent. A prosecutor has wide latitude in presenting closing arguments and can comment on a defendant's "evasive answers," conduct, and demeanor because the comments are on the defendant's statements and not on the defendant's invocation of his right to silence. *See Acuna Valenzuela*, 245 Ariz. at 222 ¶ 109; *State v. Parker*, 231 Ariz. 391, 406 ¶ 65 (2013); *State v. Mauro*, 159 Ariz. 186, 197–98 (1998). The State's comments were on Strickland's evasive answers, conduct, and demeanor, but even then, Strickland's post–*Miranda* statements were admissible. At bottom, the superior court did not err when it allowed the State to make its statements during closing arguments.

## B.        Doctor's Testimony

¶35        Strickland argues the State relied improperly on hearsay-within-hearsay testimony from the doctor who treated the victim. Defense counsel did not object during the doctor's testimony. Because Strickland did not raise the issue at trial, the court reviews for fundamental, prejudicial error. *See Melendez*, __ Ariz. at __¶ 16, 565 P.3d at 1040.

¶36        Hearsay is a statement a declarant makes outside of court offered "to prove the truth of the matter asserted in the statement." Ariz. R. Evid. 801(c)(2). With some exceptions, hearsay is inadmissible. Ariz. R. Evid. 802. Hearsay-within-hearsay is admissible if "each part of the combined statements conforms with an exception to the rule." Ariz. R. Evid. 805.

¶37        An exception to hearsay is a statement made for medical diagnosis or treatment and if it "describes medical history; past or present symptoms or sensations; their inception; or their general cause." Ariz. R. Evid. 803(4). The doctor testified about a note made in the victim's medical records about the victim's history of present illness. The note said the victim "was in the car with [the boyfriend] outside the family house and the [victim's] uncle came out of the house and shot at the car multiple times for unknown reasons, [the boyfriend] sped off and noticed [the victim] was shot and promptly called 911." The State argues it offered the note to put the victim's gunshot wound into context and the doctor's testimony explained her reaction to the note and what it meant for the victim's treatment. The doctor testified the note provided background information on the patient, the safeness of a patient's situation, especially if they are children, which would help the doctor treat the patient and then decide the patient's care plan after treatment, including post-discharge care.

**¶38** On cross-examination, defense counsel established the doctor did not take the statement down but learned the information from the police. On redirect, the State established the note came from information obtained from the victim's mother and the boyfriend, both of whom witnessed the events.

**¶39** Strickland again does not establish the required prejudice. *See supra* ¶ 34. As discussed above, strong evidence puts Strickland at the scene and has him holding and firing a gun into the vehicle where the victim was sitting when she was shot. Even if the court assumes error, nothing about that error was so egregious that Strickland "could not possibly have received a fair trial, or . . . that absent the error a reasonable jury . . . could have reached a different verdict." *See Fierro*, 254 Ariz. at 41 ¶ 21 (quoting *Escalante*, 245 Ariz. at 142 ¶ 21, 144 ¶ 29) (cleaned up).

**¶40** The same analysis applies to Strickland's alleged violation of his Sixth Amendment right to confront his accuser. He does not establish prejudice given the weight of the other evidence.

## CONCLUSION

**¶41** The court affirms Strickland's convictions and sentences.

