STATE of Wisconsin, Plaintiff-Appellant,

v.

Dennis L. DAGGETT, Defendant-Respondent.†

Court of Appeals

*No. 01–1417–CR. Submitted on briefs October 18, 2001.— Decided December 11, 2001.*

**2002 WI App 32**

(Also reported in 640 N.W.2d 546.)

† Petition to review denied 2-19-02.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Russell E. Berg*, district attorney.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Julie A. Smith* of Menomonie.

Before Cane, C.J., Hoover, P.J., and Peterson, J.[1]

¶ 1. CANE, C.J.   The State appeals from a pretrial order suppressing the results of a chemical analysis of Dennis Daggett's blood. We reverse the order because we conclude that the warrantless blood draw, performed by a doctor in the police booking room, was reasonable and, therefore, constitutional.

---

[1] Originally assigned as a one-judge appeal under WIS. STAT. RULE 752.31(2), this case was reassigned to a three-judge panel by order dated December 5, 2001. *See* WIS. STAT. RULE 809.41(3). All statutory references are to the 1999–2000 version unless otherwise noted.

## BACKGROUND

¶ 2.   The essential facts are undisputed. Daggett was arrested for operating while intoxicated after citizen informants contacted the police. The informants reported that Daggett had driven his car into their driveway, had driven down the middle of the road away from their residence, and had returned to the residence on foot. The informants said Daggett appeared to be under the influence of intoxicants or other substances.

¶ 3.   Deputy Tom Gunderson responded to the call and found Daggett asleep at the informants' residence. Gunderson woke Daggett, observed that Daggett appeared to be intoxicated and asked him to perform field sobriety tests. Daggett refused and Gunderson arrested him for operating a vehicle while under the influence.

¶ 4.   Gunderson transported Daggett to the county jail where he read Daggett the Informing the Accused form and asked whether Daggett would submit to a test to determine the amount of alcohol in his blood. Daggett refused. Nonetheless, Daggett's blood was withdrawn without a warrant in the booking room at the jail by Dr. Eugene Jonas while two officers restrained Daggett. The blood test results revealed a blood alcohol concentration of .336%. Daggett was charged with operating while intoxicated (third offense), and operating with a prohibited alcohol concentration (third offense), contrary to Wis. Stat. § 343.63(1)(a) and (b), respectively.

¶ 5.   Daggett moved to suppress the results of the blood test on grounds that the blood draw was unlawful because it took place in the county jail booking room, rather than in a hospital. At the motion hearing, Gunderson testified that it is the sheriff's department's policy not to take defendants to the hospital for a blood draw, but rather to have dispatch call a doctor to the

114

jail. "If there isn't a doctor available, we usually go to River Falls Area Hospital," Gunderson testified. Gunderson explained that it is his understanding that the department's policy is designed to save money by avoiding the cost of emergency room visits. The circuit court granted Daggett's motion to suppress and this appeal followed. We reverse and remand to the circuit court for further proceedings.

## DISCUSSION

¶ 6. The State argues that the blood draw in the booking room was justified under *State v. Bohling*, 173 Wis. 2d 529, 494 N.W.2d 399 (1993). *Bohling* outlined the constitutional requirements for warrantless blood tests in Wisconsin:

> [A] warrantless blood sample taken at the direction of a law enforcement officer is permissible under the following circumstances: (1) the blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.

*Id.* at 533–34 (footnote omitted).

¶ 7. At issue here is the third requirement :whether the method used to take the blood sample was a reasonable one and was performed in a reasonable manner. Whether the warrantless blood draw—a search under the Fourth Amendment to the United States Constitution and art. I, § 11, of the Wisconsin Constitution—was reasonable is a question of constitu-

115

tional law that we review de novo. *See State v. Thorstad,* 2000 WI App 199, ¶ 4, 238 Wis. 2d 666, 618 N.W.2d 240.

¶ 8.   Daggett concedes that having a physician draw the blood presents no constitutional or statutory problems.[2] However, he objects to the location of the blood draw:   the booking room at the county jail. Daggett takes the position that for a blood draw to be conducted in a constitutionally reasonable manner, it "must be conducted by medical personnel in a hospital setting." Daggett's argument is based on *Bohling, Thorstad* and *Schmerber v. California,* 384 U.S. 757 (1966), all of which involved blood draws that took place in hospital settings.

¶ 9.   Daggett argues that, pursuant to *Schmerber,* blood draws in a non- medical environment are unconstitutional. *Schmerber* stated:

> We are thus not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment—for example, if it were admin-

---

[2] WISCONSIN STAT. § 343.305(5)(b) provides a list of those who are qualified to draw blood in operating while intoxicated cases:

> (b) Blood may be withdrawn from the person arrested for violation of s. 346.63 (1), (2), (2m), (5) or (6) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, or a local ordinance in conformity with s. 346.63 (1), (2m) or (5), or as provided in sub. (3) (am) or (b) to determine the presence or quantity of alcohol, a controlled substance, a controlled substance analog or any other drug, or any combination of alcohol, controlled substance, controlled substance analog and any other drug in the blood *only by a physician, registered nurse, medical technologist, physician assistant or person acting under the direction of a physician.* (Emphasis added.)

istered by police in the privacy of the stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain.

*Schmerber*, 384 U.S. at 771–72. From this statement, Daggett infers a two-part requirement for blood draws:   that blood be withdrawn by medical personnel in a medical environment.

¶ 10.   Daggett also finds support in *Thorstad*, where the court stated, "Like the defendants in *Schmerber* and *Bohling*, Thorstad's blood test was performed in a medical environment and therefore done by a reasonable method in a reasonable manner." *See Thorstad*, 2000 WI App 199 at ¶ 15.

¶ 11.   The State argues that neither *Bohling* nor *Thorstad* established a bright line rule that blood can only be withdrawn in certain locations, and that both cases just happened to involve a hospital setting. Thus, the State contends case law does not mandate that blood be withdrawn at a hospital or other facility designed to perform medical procedures.[3] The State argues that drawing blood in a booking room is reasonable because blood draws are commonly done in nonmedical locations, such as in libraries and schools.

¶ 12.   Furthermore, the State contends that Pierce County has good reasons for arranging to have blood withdrawn at the jail by a medical professional. First, the environment in the jail's booking room does

---

[3] The State also argues that because WIS. STAT. § 343.305(5)(b) only specifies the qualified medical professionals who can draw blood and fails to require a specific location for the blood draw, there is no statutory requirement that blood be drawn in a medical environment. Even if the State is correct, the location nonetheless may be limited constitutionally.

not pose a personal risk of infection and pain to the person whose blood is withdrawn. Second, personnel are available at the jail to assist if a defendant physically refuses to cooperate with the blood draw. Third, it saves Pierce County citizens money because it is less expensive to pay a doctor to visit the jail than to pay for an emergency room visit.

¶ 13. The circuit court concluded that there may be some circumstances where a blood draw taken at a location other than a medical facility would pass the constitutional test of reasonableness. The court continued: "However, based on the *Bohling* case and the *Thorstad* case, it would be the rare case in which a blood draw taken at a facility other than one designed to perform medical procedures, such as a clinic, nurse's office in a jail or hospital would be reasonable." The court found that the blood draw in this case was not reasonable because the State "advanced no compelling reason why the blood draw needed to take place in the booking room of the Pierce County Jail rather than in a hospital setting."[4]

---

[4] Sometimes the circuit court used the term "hospital" while other times it referred to medical facilities. Although Daggett argues that the only reasonable medical environment is a hospital, case law contradicts his assertion. Even though the blood draws in *Schmerber* and *Thorstad* took place in a hospital, both courts used the more generic term "medical environment" in their discussion. *See Schmerber v. California*, 384 U.S. 757, 772 (1966); *State v. Thorstad*, 2000 WI App 199 ¶ 15, 238 Wis. 2d 666, 618 N.W.2d 240. Although we decline to decide whether specific facilities (*e.g.*, a nurse's office in a jail) qualify as a "medical environment," we conclude that the term is not limited to hospitals. Moreover, we conclude that a blood draw can, in some circumstances, be reasonable in a non-medical setting provided the setting does not pose a "personal risk of infection and pain." *See Schmerber*, 384 U.S. at 771–72.

¶ 14.   We conclude that the method used to take the blood sample was a reasonable one and was performed in a reasonable manner. At the outset, we reject Daggett's assertion that blood draws must take place in a hospital setting in order to be constitutionally reasonable. *See State v. Sickler*, 488 N.W.2d 70 (S.D. 1992) (drawing of blood in county jail setting was constitutionally permissible). Although *Schmerber* urged caution, it did not categorically reject the possibility that a blood draw could take place in a non-medical setting. *See Schmerber*, 384 U.S. at 771–72.

¶ 15.   Rather than establishing a bright-line rule, *Schmerber* recognized a spectrum of reasonableness. At one end of the spectrum is blood withdrawn by a medical professional in a medical setting, which is generally reasonable. Toward the other end of the spectrum is blood withdrawn by a non-medical profession in a non-medical setting, which would raise "serious questions" of reasonableness. *See id.*

¶ 16.   A blood draw by a physician in a jail setting may be unreasonable if it "invites an unjustified element of personal risk of infection and pain." *See id.* There is no such evidence here. It is undisputed that the blood draw was performed by a physician, which satisfies both statutory and constitutional requirements. *See* Wis. Stat. § 343.305(5)(b). Further, the physician used a blood test kit provided by the State Laboratory of Hygiene.

¶ 17.   Additionally, there is no evidence that the physician determined that the blood draw could not be performed consistent with medically accepted procedures. In the absence of evidence to the contrary, it is unreasonable to conclude that a medical professional authorized to draw blood under Wis. Stat.

119

§ 343.305(5)(b) would perform his or her duties in a manner that would endanger the health of the blood donor.

¶ 18.    Finally, there is no evidence in the record to suggest that the jail booking room, although not a sterile environment, presented any danger to Daggett's health. As the State notes, blood is commonly withdrawn in non-sterile environments using medically accepted procedures. We conclude that the blood draw location was reasonable. Therefore, we reverse the order suppressing the blood test results and remand the matter to the circuit court for further proceedings.

*By the Court.*—Order reversed and cause remanded with directions.