FILED BY CLERK

JUN -3 2005

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,                 )
                                      )        2 CA-CR 2004-0099
                    Appellee,         )        DEPARTMENT B
                                      )
        v.                            )        O P I N I O N
                                      )
KENNETH ALLEN MAY,                    )
                                      )
                    Appellant.        )
                                      )
_____ )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20031830

Honorable Christopher Browning, Judge

REVERSED AND REMANDED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Joseph L. Parkhurst                        Tucson
                                                       Attorneys for Appellee

Robert J. Hooker, Pima County Public Defender
  By Brian X. Metcalf                                               Tucson
                                                      Attorneys for Appellant

P E L A N D E R, Chief Judge.

¶1        After a jury trial, appellant Kenneth May was convicted of aggravated driving

under the influence of an intoxicant (DUI) while a person under fifteen years of age was in

the vehicle.  *See* A.R.S. § 28-1383(A)(3).  The trial court sentenced him to a presumptive

prison term of 3.75 years. May raises six issues on appeal, but we find one dispositive. He argues, inter alia, the trial court erred in admitting hearsay evidence. We agree and, because that evidence was significant and prejudicial, we reverse his conviction on that ground. We also preliminarily address a suppression issue because it is likely to recur on remand.

## BACKGROUND

¶2 We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against the appellant. *See State v. Riley*, 196 Ariz. 40, ¶ 2, 992 P.2d 1135, 1137 (App. 1999). Late one evening in November 2002, a Pima County sheriff's deputy saw May driving in excess of the speed limit. He pulled behind May's vehicle, saw it temporarily veer off the road, and directed May to stop. In May's car were two passengers, an adult female and a minor male.

¶3 Another officer arrived on the scene and arrested May for DUI after observing symptoms of intoxication. During the investigation, an adult male appeared on the scene and told the arresting officer the male passenger was his thirteen-year-old son. With May's consent, Deputy Curtin, a sheriff's department phlebotomist, drew a sample of May's blood at the scene. Testing showed he had a .195 percent alcohol concentration.

## MOTION TO SUPPRESS

¶4 May first challenges the trial court's denial of his motion to suppress evidence, claiming the seizure of his blood violated the Fourth Amendment to the United States Constitution. In reviewing this issue, we consider only the evidence presented at the suppression hearing and view that evidence and reasonable inferences therefrom in the light

most favorable to upholding the court's ruling. *State v. Livingston*, 206 Ariz. 145, ¶ 3, 75 P.3d 1103, 1104 (App. 2003); *State v. Crowley*, 202 Ariz. 80, ¶ 7, 41 P.3d 618, 621 (App. 2002). We will not reverse the ruling absent an abuse of discretion. *Livingston*, 206 Ariz. 145, ¶ 3, 75 P.3d at 1104. "We defer to the trial court's factual findings that are supported by the record and not clearly erroneous." *State v. Rosengren*, 199 Ariz. 112, ¶ 9, 14 P.3d 303, 307 (App. 2000). We review questions of law de novo. *State v. Estrada*, 209 Ariz. 287, ¶ 2, 100 P.3d 452, 453 (App. 2004).

¶5　　　　　May specifically argues the procedure used to take his blood sample was not "performed in a reasonable manner" and thus violated his Fourth Amendment right against unreasonable search and seizure, citing *Schmerber v. California*, 384 U.S. 757, 771, 86 S. Ct. 1826, 1836, 16 L. Ed. 2d 908, 920 (1966). In *Schmerber*, the Court ruled that a blood sample "taken by a physician in a hospital environment according to accepted medical practices" was reasonable. *Id*. at 771-72, 86 S. Ct. at 1836, 16 L. Ed. 2d at 920. The Court further stated, albeit in dicta:

> We are thus not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment–for example, if it were administered by police in the privacy of the station house. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain.

*Id*.

¶6　　　　　Although May relies on that language, *Schmerber* "did not attempt to set any specific rules for blood tests conducted outside the hospital setting." *People v. Esayian*, 5

3

Cal. Rptr. 3d 542, 549 (Ct. App. 2003); *see also Wetsch v. North Dakota Dep't of Transp.*, 679 N.W.2d 282, ¶ 17 (N.D. 2004) (*Schmerber* "did not establish a requirement that blood be drawn in a hospital in order to be reasonable."); *State v. Daggett*, 640 N.W.2d 546, ¶ 14 (Wis. Ct. App. 2001) (noting that *Schmerber* "did not categorically reject the possibility that a blood draw could take place in a non-medical setting" and that blood draws need not "take place in a hospital setting in order to be constitutionally reasonable"). "The test for lawful searches and seizures is the unreasonableness of the search under the circumstances." *State v. Hutton*, 108 Ariz. 504, 507, 502 P.2d 1323, 1326 (1972). Society recognizes that "blood tests do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity." *Winston v. Lee*, 470 U.S. 753, 762, 105 S. Ct. 1611, 1617, 84 L. Ed. 2d 662, 670 (1985).

¶7 Deputy Curtin testified at the suppression hearing that he had drawn May's blood while they stood at the rear of a police car. Wearing protective gloves, Curtin cleaned the surface of May's arm, placed a tourniquet around it, applied an antiseptic to the site of the venipuncture, and secured the arm with one hand while it rested on the trunk of the car. He then drew two vials of blood. Curtin also testified that he had experienced no problems during the blood draw and that May had not moved his arm. An expert witness May called testified that Curtin had violated the standard of care by having May stand while his blood was drawn. She testified that doing so creates a risk the individual could pass out or faint, move his arm and cause the needle to fall out, and possibly cause nerve damage.

¶8 The trial court found the seizure reasonable because the procedure Curtin used resulted in only a "slightly higher" risk of complications "in a field setting" than those of a clinical setting.[1] We have no basis for disturbing that ruling. May consented to having his blood drawn. And Curtin testified that, based on his knowledge and training, the standard of care required him to clean the arm and "not caus[e] any injury to the patient." Further, May's witness testified that on-site and clinical testing are equally reliable and both present possible risks to the patient but, in her opinion, "the risk of injury goes up" with on-site testing.

¶9 The trial court essentially determined that the possible increased risks associated with on-site testing did not render the blood draw here unreasonable. *See Schmerber*, 384 U.S. at 771-72, 86 S. Ct. at 1836, 16 L. Ed. 2d at 920. Based on this record, we cannot say the trial court abused its discretion in so ruling. *See State v. Clary*, 196 Ariz. 610, 2 P.3d 1255 (App. 2000) (upholding seizure of defendant's blood sample drawn at police station by phlebotomist while other officers restrained defendant on floor and exerted reasonable force to overcome his resistance); *Esayian*, 5 Cal. Rptr. 3d at 550 (blood draw by phlebotomist upheld when no showing made that "manner of drawing the

---

[1]May also contends the trial court applied an incorrect standard by requiring him to show "the blood draw result[ed] in actual injury" rather than considering whether it posed an unreasonable risk. We disagree. The trial court specifically stated that, "to prevail . . . , [May] must establish that the search placed him at unreasonable risk of harm or injury." Similarly, the court ruled that the procedure Curtin had used did not "place[] [May] at any unnecessary risk of injury." In addition, although the trial court mentioned the possibility of various civil remedies should a blood draw go awry, read in context, the court's Fourth Amendment ruling did not hinge on that possibility, contrary to May's contention.

blood was unsanitary, or subjected the suspect to any unusual pain or indignity"); *State v. Sickler*, 488 N.W.2d 70, 73-74 (S.D. 1992) (blood draw taken in a jail from suspect while restrained in a "semi-sitting" position reasonable); *Daggett*, 640 N.W.2d 546, ¶ 18 (finding reasonable blood draw in booking room of jail, "although not a sterile environment," when record did not suggest "any danger to [suspect's] health").

¶10 May also contends the trial court should have granted his motion to suppress because Curtin was not a trained phlebotomist. But in Arizona, a physician, registered nurse, or other "qualified person" may withdraw blood from the operator of a vehicle to determine his or her alcohol concentration. A.R.S. § 28-1388(A). A phlebotomist is a "qualified person" under the statute. *State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, ¶ 21, 30 P.3d 649, 655 (App. 2001) (phlebotomist is "a person who, through training or experience, is competent to draw blood"). A phlebotomist need not be certified, but rather, "only demonstrate competence through training or experience." *State v. Carrasco*, 203 Ariz. 44, ¶ 9, 49 P.3d 1140, 1141 (App. 2002). Deputy Curtin attended a one-week course in phlebotomy. As of November 2002, he had drawn blood 150 to 200 times. That training and experience sufficiently qualified Curtin as a person competent to draw blood. *See Esayian*, 5 Cal. Rptr. 3d at 549. We find no statutory or constitutional violation relating to Curtin's qualifications. Accordingly, the trial court did not err in denying May's motion to suppress.

**EVIDENCE OF PASSENGER'S AGE**

6

¶11    As noted earlier, at the time of the traffic stop there were two other people in May's car, a female adult and a younger male. Just before trial started, the prosecutor told the trial court that the state had not located the male passenger or his putative father who had appeared at the scene.[2] Having failed to identify or locate that passenger or the father, the state sought to prove the passenger's age through the arresting officer's testimony about what the father had told him at the scene. After a brief hearing outside the jury's presence, the trial court ruled that the state had failed to prove the male passenger was "unavailable." Ariz. R. Evid. 804(a), 17A A.R.S. Thus, the trial court ruled that Rule 804(b)(4), Ariz. R. Evid., did not apply. But, over May's objection, the court allowed the officer to testify about that passenger's age pursuant to Rule 803(19), Ariz. R. Evid.,[3] which allows hearsay reputation evidence of various "fact[s] of personal or family history."

¶12    The arresting officer testified at trial that the male passenger "looked very young, like a child, teenager at best." Based on the passenger's physical characteristics, the officer opined he was under eighteen years of age. According to the officer, during the investigation a man arrived at the scene, told the officers that he was May's brother and that

---

[2]The investigating officers failed to obtain or record the name, address, or other identification of the putative father with whom they had spoken at the scene.

[3]The hearsay exception set forth in Rule 804(b)(4), Ariz. R. Evid., permits certain evidence relating to personal or family history "if the declarant is unavailable as a witness." In contrast, the hearsay exceptions prescribed in Rule 803 apply "even though the declarant is available as a witness." The trial court rejected the state's "proffer of evidence under [Rule] 804(b)(4)" because the state had failed to show the male passenger was unavailable under Rule 804(a). Although the court made no finding on whether the passenger's putative father was unavailable, the state made no showing that he was and only sought a ruling that the passenger was "unavailable for the trial" because he might have left the state.

the minor passenger was his thirteen-year-old son, and provided the son's birth date. The officer also testified that the other man ultimately "took custody of the minor," who "appeared to be happy or joyful . . . to see this other male." May was charged with and convicted of aggravated DUI based on his having committed the underlying offense while a person under the age of fifteen was in the vehicle. § 28-1383(A)(3).

¶13 May argues the arresting officer's testimony about the age of the minor male passenger in May's car constituted inadmissible hearsay and was erroneously admitted, over his objection, pursuant to Rule 803(19). We review this evidentiary issue for an abuse of discretion. *State v. Tucker*, 205 Ariz. 157, ¶ 41, 68 P.3d 110, 118 (2003).

¶14 As the trial court correctly noted at one point, the putative father was the out-of-court "declarant" for purposes of Arizona's hearsay rules. Ariz. R. Evid. 801(b) ("A 'declarant' is a person who makes a statement."). And, the officer's testimony about the father's statements clearly was hearsay. Ariz. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Hearsay is generally not admissible. Ariz. R. Evid. 802. The question, therefore, is whether that testimony was admissible under the hearsay exception in Rule 803(19).[4]

---

[4]The arresting officer's testimony about the putative father's statements was admitted solely under Rule 803(19). The state did not argue below or on appeal, nor did the trial court find, that the evidence was admissible under the "catch-all" hearsay exception in Rule 803(24). But, in view of the court's finding that the state had not established "that the witness is unavailable pursuant to [Rule] 804(a)(5)," we presume the state similarly could not have satisfied the "reasonable efforts" requirement of Rule 803(24)(B). Nor does the

¶15 Rule 803(19) is entitled, "[r]eputation concerning personal or family history," and can apply "even though the declarant is available as a witness." That rule allows hearsay evidence concerning:

> Reputation among members of a person's family by blood, adoption, or marriage, or among a person's associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history.

This hearsay exception predates the Arizona Rules of Evidence, and such evidence "'is held admissible not only because of the extreme difficulty of producing any better evidence—that is, because it is the best evidence of which the nature of the matter admits—but also because of its general reliability.'" *In re Wallin's Estate*, 16 Ariz. App. 34, 37, 490 P.2d 863, 866 (1971), *quoting* 29 Am. Jur. 2d, *Evidence* § 508; *see also Blackburn v. United Parcel Service, Inc.*, 179 F.3d 81, 98 (3d Cir. 1999) ("[R]eputations regarding relationships and other personal and family matters within a well-defined community are considered to have the circumstantial guarantee of trustworthiness that justifies a hearsay exception."). As the court in *Blackburn* aptly noted, "we find little guidance in the sparse case law surrounding Rule 803(19)." *Id*. at 99.

¶16 Here, the "person" to whom Rule 803(19) refers is the male passenger because it is his age or birth date that is at issue. Rule 803(19) generally would allow a father to testify to his son's age even though he had no personal knowledge of it. *See State v. Cañez*,

---

record reflect that the state complied, or attempted to comply, with the procedural notice requirements of that rule.

9

202 Ariz. 133, ¶ 90, 42 P.3d 564, 589-90 (2002) (pursuant to Rule 803(19), son of murder victim allowed to testify to his father's birth date and age; victim's age can be proven by "testimony of people who knew him"); *see generally* 5 John Henry Wigmore & James H. Chadbourn, *Evidence in Trials at Common Law* § 1486(a) (1974) ("as applied to the facts of family history . . . qualified persons will be found chiefly, if not exclusively, within the family circle").

¶17        The hearsay involved here, however, is the putative father's statement to the officer. Evidence admissible under Rule 803(19) could come from three sources: "(1) family members, (2) the community, and (3) associates." Jack B. Weinstein & Margaret A. Bergur, *5 Weinstein's Federal Evidence* § 803.24[2] (2d ed. 2001). Because the officer was not a member of the male passenger's or putative father's family, the issue is whether the officer is "among [their] associates, or . . . community." Ariz. R. Evid. 803(19).

¶18        Rule 803(19) extends associates and community to include a victim's girlfriend. *State v. Medina*, 193 Ariz. 504, ¶ 21, 975 P.2d 94, 101 (1999) (testimony of victim's girlfriend and medical examiner that murder victim was over the age of seventy was sufficient for sentence aggravation purposes under A.R.S. § 13-703(F)(9)). Federal case law may assist in further defining these terms because Rule 803(19) is identical to its federal counterpart.[5] Fed. R. Evid. 803(19).

---

[5]We are aware of only two Arizona cases discussing this hearsay exception after the Arizona Rules of Evidence were adopted. *State v. Cañez*, 202 Ariz. 133, ¶ 90, 42 P.3d 564, 589-90 (2002); *State v. Medina*, 193 Ariz. 504, ¶ 21, 975 P.2d 94, 101 (1999). Although not dispositive, we note that both of those cases involved in-court statements by witnesses who had extensive ongoing contact with the person about whom the witness testified.

¶19     In *Blackburn*, the plaintiff was fired for having violated the company's antinepotism policy. To rebut that claim, he alleged the company routinely did not enforce the policy. As evidence, he sought to introduce his own testimony that other employees were related, although he lacked personal knowledge of those relationships. The court in *Blackburn* stated that evidence could be admissible to prove "[t]hat two community members are brothers or that a member of the community is another member's father" because it is likely that such "matters . . . have been discussed within the community and . . . become well-established 'facts' if no reason has been presented to doubt their truth." *Id*. at 98. But, the court noted, in order "to testify about someone's reputation within a community" pursuant to Rule 803(19), one

> must demonstrate that he or she knows of the person and is truly familiar with the "community" in which the reputation has been formed, and that the basis of the reputation is one that is likely to be reliable. Where the alleged reputation is . . . a single instance of "someone told me so," a proper foundation has not been laid for admitting such evidence under Rule 803(19).

*Blackburn*, 179 F.3d at 101.

¶20     The record does not reflect sufficient "inquiry, discussion, interactions, or familiarity" between the officers and the putative father. *Id*. at 100. The father and son met the arresting officer for the first time at the scene of a DUI investigation.[6] The father claimed to be May's brother, gave the officer the age and date of birth of the minor passenger, and

---

[6]The record does not reflect any discussion at all between the police officers and the minor male passenger about the latter's age. But even had any such discussion occurred, it would not necessarily change the analysis or result here.

left without showing any identification. The officer was not an associate of either the father or son or a member of their "community" for purposes of Rule 803(19).

¶21 Under these circumstances, admitting the statement pursuant to that rule was contrary to its purpose. Testimony of personal or family history is generally admissible because it is believed that "constant (though casual) mention and discussion of important family affairs" allow other members of the family, community, or associates to "know, as well as anyone can be expected to know, the facts of the matter." 5 Wigmore, § 1486(a). Here, the putative father's statement to the officer was not constant and, therefore, was not necessarily reliable. As May correctly points out, "the State called a police officer to repeat what an alleged family member told him about the juvenile's age."

¶22 Accordingly, the trial court erred in admitting the officer's testimony pursuant to Rule 803(19) because there was insufficient foundation establishing he was an associate of the male passenger or putative father or member of their community. The officer's testimony was hearsay, not excepted by Rule 803(19) or admissible under any other rule. Evidentiary error, however, is reversible only if the objecting party was prejudiced. *State v. Nordstrom*, 200 Ariz. 229, ¶ 71, 25 P.3d 717, 739 (2001). Here, the state had to prove that the male passenger in May's car was under the age of fifteen in order to establish aggravated DUI under § 28-1383(A)(3). The only other evidence of that passenger's age was the arresting officer's testimony that the passenger had exhibited certain physical attributes shared by other individuals under the age of eighteen.

12

¶23 Because the evidence in question was significant and prejudiced May, we cannot say its admission was harmless, nor does the state so argue. *See State v. Bass*, 198 Ariz. 571, ¶ 39, 12 P.3d 796, 805 (2000) ("[E]rroneously admitted evidence is harmless in a criminal case only when the reviewing court is satisfied beyond a reasonable doubt that the error did not impact the verdict."); *State v. McVay*, 127 Ariz. 450, 453, 622 P.2d 9, 12 (1980) (improper rehabilitation of witness with hearsay evidence not harmless error); *State v. Ruelas*, 174 Ariz. 37, 44, 846 P.2d 850, 857 (App. 1992) (erroneous admission of prejudicial hearsay evidence not harmless). Consequently, we reverse May's conviction because, other than the inadmissible hearsay, no other sufficient evidence of the passenger's age was introduced.[7]

## SUFFICIENCY OF THE EVIDENCE

¶24 In a related argument, May contends that because "there was no admissible evidence that the juvenile was under fifteen," May's "felony conviction must be vacated and his offense reduced to a misdemeanor." As noted above, we agree that only inadmissible hearsay evidence supported the age-of-the-passenger element.[8] But we disagree with May's

---

[7]Because we find the trial court erred in admitting the officer's testimony pursuant to Rule 803(19), Ariz. R. Evid., we do not address May's alternative argument, relying on *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), that admission of that evidence violated his Sixth Amendment right to confront and cross-examine witnesses. *See State v. Korzuch*, 186 Ariz. 190, 195, 920 P.2d 312, 317 (1996) ("In general , . . . we should resolve cases on non-constitutional grounds . . . where it is possible and prudent to do so.").

[8]In arguing that sufficient evidence supported the age element of the charge, the state relies solely on the arresting officer's hearsay testimony about what the putative father had told him at the scene.

13

implicit suggestion that the state may not retry him on the felony charge of aggravated DUI under § 28-1383(A)(3).[9]

¶25        Although May neither argues nor cites the Double Jeopardy Clause in support of his argument, that clause "'forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.'" *State v. Moody*, 208 Ariz. 424, ¶ 25, 94 P.3d 1119, 1133 (2004), *quoting Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 2147, 57 L. Ed. 2d 1, 9 (1978). Thus, "where a conviction has been reversed because of *insufficient evidence*, the defendant cannot be retried." *Korzep v. Superior Court*, 172 Ariz. 534, 541, 838 P.2d 1295, 1302 (App. 1991). But "[w]hen a case is reversed for trial error, the state is not foreclosed from a retrial or from presenting evidence at a new trial in response to that error." *Id.; see also Moody*, 208 Ariz. 424, ¶ 26, 94 P.3d at 1134 (Double Jeopardy Clause does not preclude retrial of defendant who successfully obtains reversal of conviction on appeal on grounds other than insufficient evidence); *State v. Sanders*, 205 Ariz. 208, ¶ 63, 68 P.3d 434, 448 (App. 2003) (same). In other words, "[a] defendant who succeeds in overturning his conviction may be retried because the reversal on appeal nullifies the original conviction and

---

[9]The cases May cites for a contrary conclusion, *State v. McGann*, 132 Ariz. 296, 645 P.2d 811 (1982), and *State v. Salazar*, 160 Ariz. 570, 774 P.2d 1360 (App. 1989), do not clearly support his argument. In *McGann*, our supreme court stated, "[w]hen hearsay evidence is the sole proof of an essential element of the state's case, reversal of the conviction may be warranted." 132 Ariz. at 299, 645 P.2d at 814. But the court merely reversed the defendant's convictions and remanded the case, without prohibiting a new trial on remand. *Id.* at 301, 645 P.2d at 816. Similarly, *Salazar* does not clearly support May's implication that a new trial is precluded whenever an essential element of the offense is proven solely by evidence ruled inadmissible on appeal.

14

wipes the slate clean." *State v. Rumsey*, 136 Ariz. 166, 169, 665 P.2d 48, 51 (1983); *see also Moody*, 208 Ariz. 424, ¶ 26, 94 P.3d at 1134 (same).

¶26      Here, our reversal of May's conviction is not based on insufficient evidence to support the jury's finding of guilt. Rather, the reversal is solely based on trial error—erroneous introduction of inadmissible hearsay evidence. Under these circumstances, a retrial on the original charge is not precluded. *See Lockhart v. Nelson*, 488 U.S. 33, 40-41, 109 S. Ct. 285, 290-92, 102 L. Ed. 2d 265, 273-74 (1988) ("[T]he Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction."); *Burks*, 437 U.S. at 15, 98 S. Ct. at 2149, 57 L. Ed. 2d at 12 (retrial permitted when reversal on appeal based on "incorrect receipt or rejection of evidence" rather than evidentiary insufficiency); *People v. Olivera*, 647 N.E.2d 926, 931 (Ill. 1995) ("[R]etrial is permitted even though evidence is insufficient to sustain a verdict once erroneously admitted evidence has been discounted, and for purposes of double jeopardy all evidence submitted at the original trial may be considered when determining the sufficiency of the evidence."). Accordingly, we decline May's invitation to vacate his conviction based on evidentiary insufficiency or to preclude retrial on remand. *See Lockhart*, 488 U.S. at 41, 109 S. Ct. at 291, 102 L. Ed. 2d at 274 ("a reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause").

## DISPOSITION

**¶27**     May's conviction is reversed, and the case is remanded for further proceedings.[10]

_____

JOHN PELANDER, Chief Judge

CONCURRING:

_____

M. JAN FLÓREZ, Presiding Judge


_____

PHILIP G. ESPINOSA, Judge

---

[10]We do not address several other arguments May raises that might or might not arise on remand. *See State v. Thomas*, 130 Ariz. 432, 433, 636 P.2d 1214, 1215 (1981); *see also Najar v. State*, 198 Ariz. 345, ¶ 13, 9 P.3d 1084, 1088 (App. 2000).  With respect to May's challenge to the jury instruction on lesser-included offenses, however, we encourage the trial court to instruct the jury in accordance with the "better practice" prescribed in *State v. LeBlanc*, 186 Ariz. 437, 438, 924 P.2d 441, 442 (1996).  *See Revised Ariz. Jury Instructions (Criminal), Std. 22 (2000).*