IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

ROGER DELANE WILSON,
*Appellant.*

No. 2 CA-CR 2021-0003
Filed May 18, 2022

---

Appeal from the Superior Court in Cochise County
No. CR201700516
The Honorable Timothy Dickerson, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Linley Wilson, Deputy Solicitor General/Section Chief of Criminal Appeals
By Karen Moody, Assistant Attorney General, Tucson
*Counsel for Appellee*

Daniel J. DeRienzo, Prescott Valley
*Counsel for Appellant*

---

**OPINION**

Presiding Judge Eppich authored the opinion of the Court, in which Vice Chief Judge Staring and Judge Brearcliffe concurred.

---

E P P I C H, Presiding Judge:

¶1        Roger Wilson appeals from his conviction and sentence for first-degree murder. He contends the trial court erred by failing to provide the jury his requested justification instructions on crime prevention and defense of a residential structure. For the following reasons, we reverse Wilson's conviction and sentence and remand for a new trial.

**Factual and Procedural Background**

¶2        We view the facts in the light most favorable to Wilson as the proponent of the instructions. *See State v. Almeida*, 238 Ariz. 77, ¶ 2 (App. 2015). In June 2017, Wilson shot J.A. in the driveway of Wilson's mother's property. Wilson had heard rumors that J.A., who had a reputation for being a "hothead" who would not back down from a fight, was going to kill him. Within the week prior to the shooting, J.A. had confronted Wilson regarding statements Wilson had made about J.A. robbing his house. They began to argue, and J.A. punched Wilson in the nose with a sharp object, causing Wilson to bleed.

¶3        On the night of the shooting, Wilson was at a house in the neighborhood when J.A. arrived. Wilson went out to the truck he was driving, and J.A. approached him. The two again argued. Wilson had a shotgun in the truck, and J.A. threatened him, stating, "next time you pull a gun on me, you better shoot me." Eventually Wilson drove off, but J.A. was still upset and wanted to "go after" Wilson. Wilson later told law enforcement that he "thought [he] was gonna be attacked there" and loaded his shotgun with one shell because he "did not know if [he] was gonna have to use it."

¶4        Wilson then went to his mother's house, but the driveway gate was locked. While Wilson was trying to get in, J.A. approached him from behind. It was "pitch black," and J.A. said, "Hey Roger," shined a flashlight in his eyes, and said "now what motherfucker, what're you gonna do shoot me?" According to Wilson, J.A. then "swelled his chest out" and lunged at him "with intent." Wilson shot J.A. once with the shotgun he had in the truck.[1]

¶5        Wilson called 9-1-1 and cooperated with law enforcement after the shooting, telling them that he believed J.A. was at his mother's house to fight him. He told detectives he knew J.A. to use drugs, and that

---

[1]The record and testimony are unclear as to the sequence of events immediately surrounding the shooting.

he believed J.A. was not alone but it was so dark he could not see who else was there.[2]

¶6        J.A. died from the shotgun wound. He had a "toxic concentration" of methamphetamine in his system, which an expert testified may have been diluted due to the blood transfusions he received while being treated. The expert also testified that methamphetamine can make someone impulsive and aggressive.

¶7        At trial, Wilson requested the court instruct the jury on multiple justification theories: self-defense using physical force, self-defense using deadly physical force, crime prevention, defense of property, and defense of residential structure or occupied vehicle. The trial court granted the request for the self-defense instruction on deadly physical force but denied the others.

¶8        Wilson was subsequently convicted of one count of first-degree murder and sentenced to natural life in prison. This appeal followed. We have jurisdiction pursuant to article VI, § 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**Discussion**

¶9        Wilson asserts the trial court erred by failing to provide his requested justification jury instructions on crime prevention and defense of a residential structure because he presented sufficient evidence supporting his requests.[3] We review the court's decision to deny a jury instruction for an abuse of discretion, but we review de novo whether the evidence

---

[2]Consistent with that belief, one of J.A.'s friends confessed to his girlfriend that he had witnessed the shooting.

[3]Wilson also takes issue with the denial of his motion for a new trial on the same grounds. The state contends Wilson has not sufficiently argued the denial of the motion on appeal. However, Wilson's notice of appeal did not encompass the denial of the motion for a new trial, and thus we lack jurisdiction to consider it. *See* § 13-4033(A)(1), (2) (denial of motion for a new trial separately appealable from judgment of conviction); Ariz. R. Crim. P. 31.2(c)(1) ("A notice of appeal . . . must identify the order, judgment, or sentence that is being appealed."). In any event, our disposition on appeal makes it unnecessary for us to reach the denial of the motion for new trial. *See State v. May*, 210 Ariz. 452, ¶ 1 (App. 2005).

supported a justification instruction. *Almeida*, 238 Ariz. 77, ¶ 9. Our sole determination is whether the record provides evidence "upon which the jury could rationally sustain the defense." *Id.* (quoting *State v. Strayhand*, 184 Ariz. 571, 587-88 (App. 1995)).

¶10        "Generally, a defendant is entitled to an instruction on any theory of the case reasonably supported by the evidence." *State v. Lujan*, 136 Ariz. 102, 104 (1983). The "slightest evidence" of justification is sufficient to entitle the defendant to an instruction, *Almeida*, 238 Ariz. 77, ¶ 9 (quoting *State v. King*, 225 Ariz. 87, ¶ 14 (2010)), but if the instruction does not fit the facts of a particular case, the trial court does not err by refusing to give it, *State v. Hussain*, 189 Ariz. 336, 337 (App. 1997).

¶11        "'[S]lightest evidence' is a low standard," *King*, 225 Ariz. 87, ¶ 15 (quoting *Lujan*, 136 Ariz. at 104), but speculation or mere inference cannot substitute for evidence, *State v. Vassell*, 238 Ariz. 281, ¶ 9 (App. 2015). In determining slightest evidence, we view the facts in the light most favorable to the party requesting the instruction and do not weigh the evidence nor resolve evidentiary conflicts. *Almeida*, 238 Ariz. 77, ¶ 9.

**Crime-Prevention Instruction**

¶12        At trial, Wilson asserted that physical force or deadly physical force was immediately necessary to prevent J.A. from committing manslaughter, murder, or aggravated assault thereby warranting a crime-prevention justification instruction.[4] Relying on *State v. Barraza*, 209 Ariz. 441 (App. 2005), the trial court denied the request. The court observed that *Barraza* limited crime-prevention justification only to the defense of a house, its contents, or the residents in the house. *See id.* ¶¶ 13, 17. Although Wilson argued *Barraza* was inconsistent with the crime-prevention justification statute, *see* A.R.S. § 13-411, the court found there was no evidence that J.A. was inside the property or threatening to commit a crime against the house, its contents, or its residents, and therefore, Wilson was not entitled to the instruction. The court added that it was speculation that J.A. was outside Wilson's mother's house to commit a crime. However, it

---

[4]Although at trial Wilson argued he was acting to prevent a murder, manslaughter, or aggravated assault under the crime-prevention statute, on appeal he solely focuses on aggravated assault. To the extent he argues that another enumerated felony should have been the basis for the instruction, he has not sufficiently developed the argument on appeal and it is waived. *See State v. Johnson*, 247 Ariz. 166, ¶ 13 (2019).

did not deny the self-defense justification instruction, finding there "clearly [was] enough evidence to give that one."

¶13 On appeal, Wilson contends the trial court incorrectly relied on *Barraza* because the crime-prevention statute, amended twice since *Barraza*, is no longer limited to protecting the residence and its contents. He further argues significant evidence, not mere speculation, supported his belief that J.A. was going to commit an aggravated assault against him and the self-defense instruction provided did not sufficiently cover the crime-prevention defense. The state agrees the court incorrectly relied on *Barraza* but argues Wilson was not entitled to the crime-prevention instruction because it was not supported by any evidence and was adequately covered by the self-defense instruction provided.

¶14 The crime-prevention statute provides that "[a] person is justified in threatening or using both physical force and deadly physical force against another if and to the extent the person reasonably believes that physical force or deadly physical force is immediately necessary to prevent the other's commission" of several enumerated crimes, including aggravated assault causing serious physical injury or with a deadly weapon or dangerous instrument. § 13-411(A); *see also* A.R.S. § 13-1204(A)(1), (2) (aggravated assault). There is no duty to retreat, and a person is "presumed to be acting reasonably . . . if the person is acting to prevent what the person reasonably believes is the imminent or actual commission of [an enumerated offense]." § 13-411(B), (C). The statute applies to "the use or threatened use of physical force or deadly physical force in a person's home, residence, place of business, land the person owns or leases, conveyance of any kind, or any other place in this state where a person has a right to be." § 13-411(D).

¶15 The trial court incorrectly relied on *Barraza* to deny the crime-prevention instruction. In 2006, the year after *Barraza* was decided, the legislature amended § 13-411 to include subsection D, explicitly applying the crime-prevention justification defense to any place in Arizona "where a person has a right to be." 2006 Ariz. Sess. Laws, ch. 199, § 3. Accordingly, the court erred in reasoning Wilson was not entitled to the crime-prevention instruction because J.A. was outside the gate of Wilson's mother's property and concluding slight evidence did not support the instruction because of that fact. *See* § 13-411(D).

¶16 The state nonetheless asserts that despite the trial court's mistaken reliance on *Barraza*, it did not err because there was not slight evidence entitling Wilson to the crime-prevention instruction. We disagree.

Although there was no evidence that Wilson acted to prevent an aggravated assault with a deadly weapon or dangerous instrument, *see* § 13-1204(A)(2),[5] there was slight evidence that J.A. was going to commit an aggravated assault causing serious physical injury against Wilson, *see* §§ 13-411(A), 13-1204(A)(1); *see also* A.R.S. § 13-105(39) ("'Serious physical injury' includes physical injury that creates a reasonable risk of death, or that causes serious and permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb.").

¶17        As described above, taken in the light most favorable to Wilson, the following evidence supported the crime-prevention defense—J.A. punching Wilson with a sharp object days earlier; J.A. threatening Wilson the night of the shooting, stating, "next time you pull a gun on me, you better shoot me"; J.A. approaching Wilson from behind, outside his mother's locked gate, in the middle of the night, saying "now what motherfucker, what're you gonna do shoot me?"; Wilson's statement to law enforcement that J.A. lunged at him, which was consistent with expert testimony as to the shot's trajectory; and the toxic concentration of methamphetamine in J.A.'s body.

¶18        The state points to evidence contradicting Wilson's version of events. For example, there was evidence that Wilson had threatened J.A. after J.A. had punched him and that the cut on Wilson's nose after the punch was a "nick." There was also testimony that on the night of the shooting, Wilson had tried to run J.A. off the road, that Wilson had been inside the gate when he shot J.A., that the blood trail had started in the street by the gate, and that J.A. had been on his knees with his hands in the air when Wilson shot him. After shooting, Wilson followed J.A. with a flashlight and attempted to reload his shotgun as J.A. stumbled away. Wilson called 9-1-1 about an hour and a half after he shot J.A., after disassembling and cleaning the shotgun he had used in the shooting. Wilson's statements to law enforcement, including his timeline of events, were inconsistent.

¶19        But we do not weigh the evidence or resolve evidentiary conflicts to determine if a trial court erred in denying a properly requested

_____

[5]Wilson never asserted that he believed J.A. had a weapon the night he shot him. Although Wilson argues on appeal that J.A. could have had a weapon, speculation cannot substitute for evidence. *See Vassell*, 238 Ariz. 281, ¶ 9.

instruction. *Almeida*, 238 Ariz. 77, ¶ 9. That the evidence of justification here could be fairly debated or contradicted is irrelevant to our analysis. *Id.* ¶ 11; *cf. Everett v. State*, 88 Ariz. 293, 299 (1960) ("Defendant claimed he was acting in self-defense, and that what he did was necessary for his own protection. Whether that is true or not was a question of fact for the jury and not for the court." (quoting *Richardson v. State*, 34 Ariz. 139, 144 (1928))). Wilson presented the requisite modicum of evidence necessary, and such evidence entitled him to the crime-prevention instruction. *See Almeida*, 238 Ariz. 77, ¶¶ 11, 13 ("court could not deny the [crime-prevention] instruction here simply because the victim was not committing an aggravated assault at the moment [the defendant] acted to prevent such an offense"); *cf. State v. Carson*, 243 Ariz. 463, ¶¶ 18-20 (2018) (defendant need not produce proof of every element of self-defense, entitled to instruction where victims had "jumped" defendant and one victim had knife, despite "substantial evidence" suggesting he did not act in self-defense); *King*, 225 Ariz. 87, ¶¶ 2, 15-16 (defendant entitled to self-defense instruction after being hit in the head by a two-liter bottle of water and responding with deadly force).

¶20 Moreover, the trial court found there was "clearly" enough evidence to give the self-defense instruction. The court instructed the jury that Wilson was justified in his use of deadly physical force in self-defense if a reasonable person in the situation would have believed such force was immediately necessary "to protect against another's use, attempted use, threatened use, apparent attempted use, apparent threatened use of unlawful deadly physical force," and Wilson "used or threatened no more deadly physical force than would have appeared necessary to a reasonable person in the situation." It defined "deadly physical force" as either "force which is used with the purpose of" or "force which in the manner of its use is capable of creating a substantial risk of" causing death or serious physical injury. But any slight evidence supporting the self-defense instruction here would have also necessarily supported the prevention of an aggravated assault causing serious physical injury, and thus the court erred in failing to provide the crime-prevention instruction. *See Almeida*, 238 Ariz. 77, ¶¶ 10-11 (trial court could not harmonize disparate rulings on self-defense and crime prevention instructions because same evidence supported both).

**Harmless Error**

¶21 The state has the burden on appeal of proving beyond a reasonable doubt that the failure to provide the crime-prevention instruction did not contribute to or affect the verdict. *See id.* ¶ 25. We have

previously observed that "the denial of a properly requested jury instruction under § 13-411 will usually be reversible error, given the prejudice that naturally flows from the refusal to allow a distinct legal theory of defense, and from the failure to clarify the state's burden of proof on that issue." *Id.* (internal citation omitted). But the state asserts the error was harmless on the facts of this case because the "broad" self-defense instruction described above incorporated Wilson's crime-prevention defense, such that any rejection of the self-defense theory would necessarily require rejection of the crime-prevention theory. We disagree.

**¶22** A court need not provide a requested jury instruction that is adequately covered by other instructions. *State v. Gentry*, 247 Ariz. 381, ¶ 24 (App. 2019). But our case law has long rejected the argument that a self-defense instruction adequately covers a crime-prevention instruction because of two significant distinctions: the statutes protect against separate harms, and the crime-prevention statute provides a presumption of reasonableness not afforded by self-defense. *Almeida*, 238 Ariz. 77, ¶¶ 17-23 (crime prevention is a "more permissive" justification defense and is unique from self-defense (quoting *State v. Korzep* (*Korzep I*), 165 Ariz. 490, 492 (1990))).

**¶23** Under a theory of self-defense, the statute requires that the defendant is acting to protect himself to the extent immediately necessary against another's "use or attempted use of unlawful physical force," but verbal threats are not enough. A.R.S. § 13-404(A), (B)(1). In contrast, under a theory of crime-prevention, there is no requirement that another use or attempt to use force. § 13-411. Instead, the statute only requires that the defendant is acting to prevent the commission of an enumerated crime "if and to the extent" reasonably believed immediately necessary. *Id.*; *see Almeida*, 238 Ariz. 77, ¶ 13 ("[T]he effect of the crime prevention privilege is to allow a person to use force in preventing a crime, rather than compel him to await the commission of the unlawful act." (quoting *Korzep v. Superior Court* (*Korzep II*), 172 Ariz. 534, 537 n.2 (App. 1991))). Thus, the two statutes protect against separate harms. *Id.* ¶ 19.

**¶24** Even though the instruction provided here was broader than the self-defense statute because it incorporated the "threatened use" and "apparent threatened use" of unlawful deadly physical force, *see* § 13-404(A), (B)(1), it still did not account for a crime-prevention theory because it required that J.A. had, at the least, made an apparent threat of unlawful deadly force against Wilson. The jury may have rejected Wilson's self-defense justification because it found J.A. had not threatened Wilson

with unlawful deadly physical force. But even if the jury believed J.A. had not threatened Wilson, considering the surrounding circumstances, the jury could have still found Wilson to have reasonably believed that J.A. was going to commit an aggravated assault against him. *See Almeida*, 238 Ariz. 77, ¶ 19 (under self-defense, harm to be prevented is use of force whereas under crime-prevention, harm to be prevented is an enumerated crime); *Korzep I*, 165 Ariz. at 492 ("the only limitation upon the use of deadly force under § 13-411 is the reasonableness of the response"). Accordingly, the jury instruction here on self-defense did not cover Wilson's crime-prevention defense.

¶25        Moreover, the instruction did not account for the second distinguishing feature of the crime-prevention statute, the presumption of reasonableness. "A person is presumed to be acting reasonably . . . if the person is acting to prevent what the person reasonably believes is the imminent or actual commission of [an enumerated crime]." § 13-411(C). In *Almeida*, we observed that our supreme court had described this presumption as "perhaps the 'most important' feature of a crime-prevention instruction." 238 Ariz. 77, ¶ 20 (quoting *Korzep I*, 165 Ariz. at 492).

¶26        The state asserts that statutory amendments have rendered the crime-prevention presumption superfluous. It contends our reliance on *Korzep I* in *Almeida* was misplaced because justification defenses are no longer affirmative, *see* 2006 Ariz. Sess. Laws, ch. 199, § 2, and the presumption now requires an objectively reasonable belief that an enumerated offense is imminent or actually occurring, § 13-411(C); *see* 2011 Ariz. Sess. Laws, ch. 353, § 2. It thus argues the presumption is "essentially a restatement of the justification defense itself" and is no longer the "'most important' part of the statute" because the state has the heavier burden of disproving justification beyond a reasonable doubt.

¶27        But at the time *Korzep I* was decided, the burden of disproving a justification defense was on the state, just as it is now. *See Almeida*, 238 Ariz. 77, ¶ 21 (burden on defendant to prove justification from 1997-2006); *see generally Korzep I*, 165 Ariz. 490 (decided in 1990). And despite the statutory changes relied on by the state, A.R.S. § 13-205(B) specifically directs that the state's burden of disproving justification beyond a reasonable doubt "does not affect the presumption contained in § 13-411." Had the legislature thought the change in burden, or the objective versus subjective standard of the presumption rendered it of no consequence, it would have removed this language. *See State v. Fikes*, 228 Ariz. 389, ¶ 6 (App. 2011) (we construe statutes to not render any part superfluous). And

although rebuttable, the jury nevertheless should be made aware of the presumption in § 13-411, and it cannot be omitted simply because the state offered evidence that rebuts it. *Almeida*, 238 Ariz. 77, ¶¶ 20-22. Due to the presumption of reasonableness under crime prevention, the self-defense justification instruction did not adequately cover the crime-prevention instruction requested by Wilson. *See id.* ¶ 20.

**¶28** The state also asserts the error was harmless because the evidence of guilt was overwhelming and the jury convicted Wilson of premeditated murder. If evidence is so overwhelming that any reasonable jury could only reach a conclusion of guilt, we can find error harmless. *State v. Anthony*, 218 Ariz. 439, ¶ 41 (2008). We disagree, however, that the evidence here was so overwhelming that no reasonable jury could find that Wilson was not justified under a crime-prevention theory. Nor do we find the jury's finding of premeditation persuasive. If the jury had found the state did not disprove a crime-prevention justification beyond a reasonable doubt, the jury would have no reason to reach whether there was premeditation, and the verdict would have necessarily been different. *See* § 13-205 ("Justification defenses describe conduct that, if not justified, would constitute an offense but, if justified, does not constitute criminal or wrongful conduct."). For the foregoing reasons, we conclude the trial court's error in failing to provide the properly requested crime-prevention instruction was not harmless. *See Almeida*, 238 Ariz. 77, ¶ 25; *Hussain*, 189 Ariz. at 339 (due to its difference from other justification instructions, failure to provide § 13-411 instruction cannot have been harmless).

**Defense of a Residential Structure Instruction**

**¶29** Having found the crime-prevention instruction error was not harmless and reversing his conviction, we need not reach the other issue Wilson raises: whether the trial court erred in denying the requested defense of a residential structure instruction. *See State v. May*, 210 Ariz. 452, ¶ 1 (App. 2005). However, because it is likely to recur on retrial, in our discretion, we address it. *See id.*

**¶30** As relevant here, to be entitled to the defense of a residential structure instruction, Wilson had to produce the slightest evidence that J.A. was "in the process of unlawfully or forcefully entering . . . a residential structure or occupied vehicle." A.R.S. § 13-418. At trial, Wilson argued he was entitled to the instruction because J.A. was at "the front door of the property" and it was a reasonable inference that he was there to enter the property. He further asserted that the truck's side door was open and J.A. was coming towards him and the truck. The state countered there was no

evidence J.A. was trying to enter the car or the property. The trial court concluded that it was "speculation that [J.A.] had to be shot because he was getting ready to jump in that truck and drive off with it" or "was going to climb over the fence and commit some crime against the mom or some property crime against the residence." Accordingly, the court denied the requested instruction.

¶31 On appeal, Wilson asserts he was entitled to this instruction because his mother was "clearly within the sphere of those against whom physical force or deadly physical force was threatened." The state again asserts there was no evidence supporting the defense of a residential structure instruction. We agree.

¶32 There is no evidence that J.A. was in the process of unlawfully or forcefully entering a residential structure or occupied vehicle. *See* § 13-418. Even viewing the evidence in the light most favorable to Wilson, *see Almeida*, 238 Ariz. 77, ¶ 2, the truck was unoccupied at the time J.A. confronted him and J.A. stood outside of the gate, which was set away from Wilson's mother's residence, *see* A.R.S. § 13-1501(5), (11) (residential structure does not include a "[f]enced residential yard," which is a "unit of real property that immediately surrounds or is adjacent to a residential structure and that is enclosed by a fence"). Although Wilson told officers he knew J.A. to be a thief and he had the right to defend himself and his mother, Wilson points to no evidence showing that J.A. was in the process of unlawfully or forcefully entering either the residence or an occupied vehicle, nor does the record disclose any. Because there was not the slightest evidence supporting the instruction, the trial court did not err in refusing to provide it.[6] *See Hussain*, 189 Ariz. at 337 (court does not have to

---

[6]Wilson also asserts the admission of an officer's discussion of the "Castle Doctrine" in an interview and a statement of law made by the prosecutor during closing argument were erroneous. It appears he is using these instances to demonstrate the harm caused by the denial of the requested instructions. But to the extent he argues these were standalone errors requiring reversal, Wilson did not object at trial and has not sufficiently developed an argument of error on appeal, let alone fundamental error. Accordingly, he has waived review of these issues. *See State v. Vargas*, 249 Ariz. 186, ¶ 22 (2020) (failure to properly develop an argument, including the applicable standard or review, may waive review on appeal).

give instructions not supported by the facts); *see also Vassell*, 238 Ariz. 281, ¶ 9 (speculation cannot substitute for slight evidence).

## Disposition

**¶33**        For the foregoing reasons, we reverse Wilson's conviction and sentence, and remand for a new trial.