NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERT A., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, R.A., *Appellees.*

No. 1 CA-JV 17-0450
FILED 3-20-2018

Appeal from the Superior Court in Maricopa County
No. JD34128
The Honorable M. Scott McCoy, Judge

**REVERSED**

COUNSEL

Law Office of John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1**          Robert A. ("Father") appeals the juvenile court's order finding R.A. dependent as to Father on the ground of physical abuse. Father contends the court abused its discretion by admitting summaries of the children's forensic interviews into evidence in violation of his due process rights and the Arizona Rules of Evidence, and based its ruling on insufficient evidence. For the following reasons, we reverse.

## FACTS AND PROCEDURAL HISTORY

**¶2**          Father is the biological parent of R.A., born in 2014. Father additionally has another biological child,[1] over whom he has joint custody, and lives with his wife ("Mother") and her two biological children: C.C., born in 2007; and V.C., born in 2009 (collectively, "the children").

**¶3**          In 2017, DCS received a report of suspected abuse from the children's school. DCS, and the Maricopa County Sheriff's Office, then went to the school to interview C.C. and V.C.[2] During the interview, V.C. reported that Father had recently "punched" him in the foot, previously picked him up and choked him, and had previously punched C.C. in the stomach. The investigators, however, did not observe any bruising or other physical signs of abuse on V.C. Following the interviews, DCS removed the children from the home and established a safety plan, which prohibited Father from having contact with the children pending further investigation. As a result, Father moved out of the family home.

---

[1]      The Department of Child Safety ("DCS") has not alleged that this child is dependent as to Father.

[2]      V.C. and C.C. additionally underwent forensic interviews a couple months after the initial interviews.

¶4          DCS subsequently petitioned for dependency, alleging R.A. was dependent as to Father on the ground of abuse, and that R.A., V.C., and C.C. were dependent as to Mother based on her failure to protect them from Father's abusive behavior.[3] The petition specifically alleged that Father had punched V.C., picked him up by his neck, and choked him. It additionally alleged that Father had punched C.C. in the stomach. DCS argued that if any child were to stay "in the home [it] would be contrary to the child's welfare" and that the children's current and future safety was at issue if they remained with Father. DCS, however, did not specifically allege that Father had abused R.A. or that R.A. had witnessed the abuse of V.C. and/or C.C.

¶5          Pursuant to Rule 59, Father filed a motion to have R.A. returned to his custody. The parties then moved for a joint dependency and Rule 59 hearing. Before the hearing, Father joined Mother's motion to preclude DCS from introducing the children's statements about the alleged abuse, arguing the statements violated the parents' due process rights. The motion alternatively requested that DCS explicitly inform the parents which of the children's statements it intended to admit, when those statements were made, and through which witness the statements would be offered. In response, DCS stated that it planned to introduce V.C.'s statements about two incidents of alleged abuse, which were previously disclosed in its dependency petition.[4] Father, however, maintained his objection to the admission of V.C.'s statements for the dependency hearing. Father additionally objected to DCS' request to admit the summaries of C.C.'s and V.C.'s forensic interviews as hearsay, arguing the transcripts or videos of the interviews should be admitted instead. The court sustained Father's objection, but found the summaries may be admitted for the dependency hearing if DCS laid the proper foundation.

---

[3]      DCS also alleged that C.C. and V.C. were dependent as to their biological father. Before the hearing, however, DCS withdrew its dependency petition for C.C. and V.C.

[4]      In 2014, V.C. received staples for a cut to his head that occurred because he slipped after Father pushed him/patted his back. The Maricopa County Sheriff's Office investigated the incident, but did not press charges and found the incident was an accident. DCS also found the claim of abuse to be unsubstantiated. In 2017, V.C. stated Father punched him in the foot and picked him up and choked him and punched C.C. in the stomach.

¶6 At the dependency/custody hearing, Father admitted that he occasionally used physical means to discipline the children, such as making them run laps. Father maintained, however, that he never choked or abused the children. Father additionally testified that V.C.'s statements, that he had been hit and choked, were taken out of context and referred to Father "play-fighting" or playing video games with the children. In support of his argument, Father testified that the Maricopa County Sheriff's Office had closed its investigation of the 2017 incident without pressing charges and that Father had been successfully participating in numerous self-improvement services, such as anger management courses, parenting courses, individual counseling, and working with a parent aide.

¶7 Next, a contract forensic interviewer testified about her interviews with C.C. and V.C. regarding the suspected abuse in 2017. During her testimony, DCS moved to admit the summaries of the forensic interviews into evidence under the business records exception to the hearsay rule. The juvenile court admitted the summaries, over Father's objection.[5] The interviewer then testified that V.C. initially told her that he lied about being choked, hit on the foot, and thrown to the ground because he was mad at Father.[6] V.C. then contradicted these statements, stating Father had slapped him on the foot, but reiterated that neither he nor C.C. had been choked. V.C. then again contradicted himself and admitted to being choked. The interviewer also testified that V.C. told her that Father punched C.C. in the stomach. C.C., however, did not disclose any abuse to the interviewer, and instead said he did not want to talk because he "did not want to lie or get in trouble." The interviewer did not interview R.A., and at no point did DCS present evidence that R.A. witnessed any abuse, or had been abused himself. A DCS investigator, however, testified that

[5] The parents objected to the admission of the summaries, in part, because, in their view, the summaries were incomplete and misleading, and did not contain all the information obtained during the interviews. For example, at the hearing DCS, in addressing Mother's contention and a prior example where V.C. was not being truthful in the subject interview, asked Mother where in the summaries V.C. stated that he had three dogs when the family had none. Mother's counsel objected stating "[t]hat's not the forensic interview. That is a summary of the forensic interview. And that is exactly why we objected to it being entered into evidence."

[6] Mother had, upon learning of the school's initial report to DCS and the Sheriff's Department, immediately informed DCS that V.C. was under psychiatric care for ADHD impulsive behavior disorder and lying.

DCS was concerned that if Father returned home he would focus his aggression on R.A., and that DCS would be unaware of any abuse because of R.A.'s age.

**¶8**        Following the hearing, the juvenile court took the matter under advisement and ultimately granted DCS' petition, finding R.A. dependent as to Father.[7]  Father timely appealed, and we have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9; Arizona Revised Statutes ("A.R.S.") section 8-235(A) (2014); and Arizona Rules of Procedure for the Juvenile Court 103(A).

**ANALYSIS**

**¶9**        We review a juvenile court's dependency finding for an abuse of discretion, and will only overturn the finding if it is not supported by reasonable evidence.  *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 13 (App. 2016).  *See also Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011) ("The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." (citation omitted)).  In reviewing the court's decision, we defer to its finding of facts, and view the evidence in "the light most favorable to sustaining the juvenile court's findings."  *Id.* (citing *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010)).  The court has broad discretion in making a dependency finding and must act in the best interest of the child.  *Michael M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 230, 234, ¶ 17 (App. 2007).

    *I.    Due Process*

**¶10**        On appeal Father argues the admission of the summaries into evidence instead of the videos or transcripts of the interviews violated his due process rights because the summaries contained the children's hearsay statements, which he did not have the opportunity to confront or contradict. We disagree.

**¶11**        To determine the extent of a parent's due process rights we apply a balancing of interests' test and consider: (1) the nature of the proceedings; (2) the private interests at stake; (3) the state's interests; (4) the risk that the procedures used will lead to an erroneous decision; and (5) the best interests of the child.  *See Dep't of Child Safety v. Beene*, 235 Ariz. 300,

---

[7]        R.A. was also found dependent as to Mother; however, she is not a party to this appeal.

305-06, ¶¶ 11-12 (App. 2014).  Although *Beene* applied this balancing test to determine whether parents had a due process right to call their children as witnesses at a severance hearing, here, the same test can be used to determine whether admitting the summaries containing V.C.'s statements, that Father abused him, violated Father's due process rights.  On this record, we conclude it does not.

**¶12**         Unlike a severance hearing, a dependency hearing does not permanently alter a parent's right to parent his child.  Thus, while we recognize that a parent has a fundamental right to parent his child, *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14 (App. 2001), this right, in a dependency hearing, does not outweigh the state's interest in protecting a child from potential abuse.  Father did not seek to call or cross-examine either child, but had the opportunity to and did cross-examine the interviewer at length about the children's statements, her preparation of the summaries, and subsequently, her decision to include only certain information in those summaries.  Accordingly, Father was able to clearly highlight any discrepancies between the children's statements in the interviews and the information selected for the summaries.  Given these factors, and upon balancing the interests at stake, we cannot say that the juvenile court deprived Father of his due process rights by admitting the summaries of the interviews into evidence.[8]

*II.*     *Admissibility of Evidence*

**¶13**         Father further argues the juvenile court's admission of the summaries into evidence constituted impermissible hearsay, and violated the best evidence rule.  DCS, in response, argues the summaries were properly admitted as business records.

**¶14**         The admissibility of evidence in juvenile court proceedings is governed by the Arizona Rules of Evidence, except as otherwise provided by statute or in the juvenile court rules. Ariz. R.P. Juv. Ct. 45(A). Generally, hearsay—an out-of-court statement offered to prove the truth of a matter asserted—is inadmissible unless it falls within a recognized hearsay exception. Ariz. R. Evid. 801(C); 802.  One such exception is that a business record may be admitted into evidence if:

---

[8]     We also note that, while the court ruled the summaries admissible, that ruling did not preclude either Father or Mother from moving to admit the videos and/or full transcripts of the interviews for the court's consideration.  Neither chose to do so.

(A) the record was made at or near the time by -- or from information transmitted by -- someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Ariz. R. Evid. 803(6).

**¶15** However, even if evidence is admitted as a business record, any hearsay statements made in that record must be independently admissible. *See State v. McGann*, 132 Ariz. 296, 298 (1982).

**¶16** DCS argues the summaries of the forensic interviews with V.C. and C.C. were properly admitted as business records because the forensic interviewer prepared the summaries after interviewing the children and while reviewing the recording of the interviews. Further, the interviewer testified that she regularly prepares these type of summaries as a part of her employment with the Maricopa County Attorney's Office. Neither parent challenged the foundation offered for this hearsay exception. Moreover, the children's statements, which were paraphrased in the summaries, were admissible under an independent exception to the rule against hearsay. The Arizona Rules of Procedure for the Juvenile Court allow for a child's out-of-court statement to be admitted into evidence if the statement concerns "acts of abuse or neglect perpetrated on the child" and the "time, content and circumstances of [the] statement . . . provide sufficient indicia of its reliability." Ariz. R.P. Juv. Ct. 45(E) [9]; *accord* A.R.S. § 8-237 (2014).

---

[9] Even if the summaries were inadmissible under the business record exception, they may have also been admissible pursuant to Ariz. R.P. Juv. Ct. 45(D), which provides that "a report of any psychological, psychiatric,

¶17            Father's argument that the summaries do not satisfy Ariz. R.P. Juv. Ct. 45(E) and A.R.S. § 8-237 because there is no indicia of reliability fails. As previously noted, the person who interviewed V.C. and C.C. was the same person who prepared the summaries. Additionally, the interviewer testified at the hearing about her interviews with the children and her process of preparing the summaries. Father then cross-examined the interviewer and had the opportunity to highlight any inconsistencies in her testimony and purported flaws in the summaries. Father provided no evidence that the interviewer's method of preparing the summaries was unreliable or that the summaries contained inaccurate information. The mere fact that the summaries did not include all the information gathered in the interview, does not, a fortiori, render them unreliable.

¶18            Father's next argument that the admission of the summaries violates the best evidence rule also fails. The codification of the best evidence rule provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or an applicable statute provides otherwise." Ariz. R. Evid. 1002. This rule applies only when the contents of a writing are in dispute. *See State v. Steinle*, 239 Ariz. 415, 419, ¶ 19 (2016). Here, neither party seeks to prove the authenticity of the summaries. Rather, the summaries served to illustrate the interviewer's interaction with the children. Further, as previously noted, either parent could have offered the videos and/or the complete transcripts of the interviews, and chose not to. Accordingly, the juvenile court did not abuse its discretion in admitting the summaries into evidence.

>           III.    *Preponderance of the Evidence*

¶19            Father also argues that DCS failed to prove R.A.'s dependency as to Father by a preponderance of the evidence because DSC failed to interview V.C.'s psychiatrist, failed to interview Father, and failed to allege, let alone prove, that R.A. was at risk for abuse. On this record, we agree.

¶20            To find a child dependent as to a parent, DCS must prove by a preponderance of the evidence the allegations in its dependency petition. *Shella H.*, 239 Ariz. at 50, ¶ 13 (finding this court will only disturb a juvenile court's dependency finding if no reasonable evidence supports the ruling

---

medical, neurological, psycho-educational, psycho-sexual, substance abuse or similar evaluation of any party . . . shall be admitted into evidence if the report has been disclosed to the parties pursuant to Rule 44(B)(1) and the author of the report is available for cross-examination."

(citation omitted)). As relevant here, a child will be found dependent if his parent "is unfit by reason of abuse." A.R.S. § 8-201(15)(a)(iii) (2017). Abuse includes "the infliction . . . of physical injury, impairment of bodily function or disfigurement or the infliction of . . . serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior." A.R.S. § 8-201(2). Physical injury is defined as "the impairment of physical condition and includes any skin bruising, pressure sores, bleeding, failure to thrive, malnutrition, dehydration, burns, fracture of any bone, subdural hematoma, soft tissue swelling, injury to any internal organ or any physical condition that imperils health or welfare." A.R.S. § 13-3623 (2010) (adopting § 8-201(2)'s definition of abuse).[10]

**¶21**         A preponderance of the evidence is "that degree of proof which induces the mind of a reasonable man to believe one side of an issue in preference to the other." *Anderson v. Territory*, 9 Ariz. 50, 53 (1904). *See also Maricopa Cty. Juv. Action No. J-84984*, 138 Ariz. 305, 310 (App. 1983), *vacated on other grounds*, 138 Ariz. 282 (1983) (finding the preponderance of the evidence requires something more than mere probabilities and must leave a reasonable person "satisfied and convinced of the truth of the matter"). A preponderance of the evidence standard allocates the risk of error equally between parties and requires that the juvenile court "determine whether a fact sought to be proved is more probable than not." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 25 (2005).

**¶22**         At the hearing, the forensic interviewer and the DCS investigator testified that V.C. stated that Father physically abused him and C.C. They also testified about their interactions with the children and the parents. Based on V.C.'s statements at the beginning of the investigation, DCS alleged that, with Father at home, all of the children were at risk of

---

[10]         Although we reverse on insufficiency of the evidence, we further note DCS failed to prove the existence of physical injury or abuse, as defined in the statutes. Although DCS introduced controverted evidence that V.C. said Father had punched and choked him, DCS failed to establish that any of Father's alleged actions caused V.C. serious emotional damage, bodily impairment, or physical injury, which resulted in "the impairment of [V.C.'s] physical condition." *See* A.R.S. § 8-201(2); § 13-3623. Moreover, we recognize that a parent has the right to use reasonable physical force to discipline a child, without such force rising to the level of abuse. *See* A.R.S. § 13-403(1) (2010). What a parent cannot do, however, is use force that would result in physical injury.

physical abuse. However, close review of the record shows DCS failed to present sufficient evidence that R.A. or, for that matter, any child would be at risk in Father's household. While a DCS caseworker opined that if V.C. and C.C. were removed from the house Father would likely become abusive with R.A., these statements, at best, constituted mere speculation. Even taken at face value, the evidence concerning alleged past abuse of C.C. and V.C. — particularly in light of V.C.'s contradictory statements and C.C.'s refusal to "tell a lie" — is hardly compelling, let alone "more probable than not." *See Kent K.*, 210 Ariz. at 284, ¶ 25. While it is generally true that the juvenile court is in the best position to evaluate witness credibility, an appellate court must still review that evidence and determine whether DCS has met its burden of proof, particularly as it relates to the issue of child safety, which is the most important factor in whether to impose or extend a finding of dependency. Even applying that deferential standard, we find DCS' proof insufficient to meet its burden.[11]

**¶23** Here, Father has already successfully completed many of the services and classes DCS has recommended, and a DCS caseworker who observed the children and the parents interact in the home on multiple occasions recommended that the family be reunified. Finally, DCS presented no meaningful evidence to support its allegation by a preponderance of the evidence that any of the children would be at risk if living with Father at home: there were no psychological reports concerning Father or Mother, or any of the children; no school records indicating that any of the children are traumatized or apprehensive in Father's presence or care; and no indication that Father's progress in pending services and instruction is anything other than completely satisfactory.

**¶24** Thus, in this unusual setting, we find the juvenile court abused its discretion in finding by a preponderance of the evidence that R.A. is dependent as to Father.

---

[11] Although we have previously taken judicial notice that "there may be a psychology of abuse, that is to say, a parent who abuses one child is likely to abuse a second child[,]" we decline on this record to do so here. *Cochise Cty. Juv. Action No. 5666-J*, 133 Ariz. 157, 162 (1982).

## CONCLUSION

¶25     The juvenile court's order finding R.A. dependent as to Father is reversed.



AMY M. WOOD • Clerk of the Court
FILED:  AA